**Teresa PARNELL, Plaintiff,**

v.

**BOOTH NEWSPAPERS, INC.,
Defendant.**

**No. G82–722.**

United States District Court,
W.D. Michigan, S.D.

Jan. 31, 1983.

See also, D.C., 572 F.Supp. 897.

**912**

Paul M. Ladas, Muskegon, Mich., for plaintiff.

William M. Newman, Landman, Luyendyk, Latimer, Clink & Robb, Muskegon, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

Plaintiff in this diversity action alleges that photographs of her were published in connection with two newspaper articles on the subject of prostitution in Muskegon Heights, Michigan. The articles and accompanying photographs appeared on page 1B of the September 20, 1981 edition of *The Muskegon Chronicle,* a newspaper owned and published by Defendant. Plaintiff claims that as a result of the publication, in which she was allegedly recognizable to relatives, friends and acquaintances, she was falsely imputed to be a prostitute, and has consequently suffered damages. Specifically, Plaintiff's Complaint alleges four counts of liability against Defendant: defamation, negligent infliction of emotional distress, intentional infliction of emotional distress, and invasion of privacy.

Presently before the Court is Defendant's Motion to Dismiss as to negligent infliction of emotional distress, and for summary judgment on the other counts. Plaintiff makes a cross Motion for Summary Judgment on all counts. Several affidavits, as well as the articles, photographs, and retouch work on the photographs, have been submitted for the Court's consideration, and are discussed below.

### I. Defamation

Defendant first argues that no jury could conclude that Plaintiff was recognizable in the photographs which appeared with the articles, and that the Defendant must therefore prevail on this count. In support of this claim, Defendant has submitted prints of the original photographs taken, prints showing "retouching" done on the photographs, and the newspaper page which contains the articles and photographs. These materials are verified as genuine by the affidavit of John Stephenson, Assistant Metro Editor of *The Muskegon Chronicle.* Stephenson further states in his affidavit that the original photographs were retouched by the newspaper's graphics department in order to conceal the identity of the woman and the vehicles which appeared in the photographs.

Plaintiff argues that, to the contrary, she is obviously recognizable in the photographs, that Defendant's motion must therefore be denied, and Plaintiff's Motion for Summary Judgment further considered. In support of her argument, Plaintiff has submitted a photograph of herself, and states in an affidavit that after the publication, she was identified as the woman in the photographs by friends, acquaintances, her parents, her landlady and by her father's co-workers. Plaintiff attests that her identification was possible because of her hairstyle, height and stance; and that her facial features in the photographs are clear when examined with a magnifying glass. She further states that she lives very close to the location at which she was photographed, and often frequents that area on foot, as she does not own a car. Plaintiff's mother has also submitted an affidavit, to the effect that upon reading the articles on September 20, 1981, she immediately recognized the woman in the photographs as her daughter.

Defamation has been generally defined as a communication which:

> ... tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with or dealing with him. *Nuyen v. Slater,* 372 Mich. 654, 662, 127 N.W.2d 369 (1964).

Recognition of the Plaintiff is of course an inherent element of Plaintiff's claim for defamation. However, the fact that both parties have moved for summary judgment on this issue does not require a finding that there are no issues of material fact and that

summary judgment is appropriate. Wright and Miller, *Federal Practice and Procedure: Civil,* § 2720, p. 459; *Begnaud v. White,* 170 F.2d 323 (CA 6 1948). As the Plaintiff observes, the fact that the Defendant took steps to obscure Plaintiff's identity does not inevitably lead to the conclusion that the steps taken were effective. Furthermore, a review of the original photographs and the newspaper publication of them, does not indicate that identification of Plaintiff would be impossible, especially considering facts Plaintiff has suggested which could, taken together, lead to her identification. At the same time, the affidavits of Plaintiff and her mother are not sufficient to convince the Court that a jury must find that Plaintiff is recognizable. Defendant should have an opportunity to probe the credibility of such testimony at trial, by such means as cross examination of Plaintiff's witnesses, or by demonstrating to the jury the steps taken to conceal Plaintiff's identity. The Court finds that the question of whether or not Plaintiff is recognizable as the woman in the photographs as they appeared in the newspaper is a contested issue of material fact, and that summary judgment is therefore not appropriate on this ground.[1]

Defendant argues that regardless of whether or not Plaintiff is recognizable in the photographs, Plaintiff must show actual malice on the part of Defendant in publishing the photographs, and that Plaintiff has produced no evidence indicative of such malice. Defendant assumes that a qualified privilege attaches to the use of the photographs, because the subject matter of the articles is one of public interest. Defendant further assumes that Plaintiff must prove actual malice in order to defeat that qualified privilege. Defendant relies upon *Peisner v. Detroit Free Press,* 82 Mich. App. 153, 266 N.W.2d 693 (1978), as the basis for both of these assumptions.

In *Peisner,* an attorney sued the *Detroit Free Press,* which had published articles criticizing court appointments of counsel where the judge was a friend of the attorney appointed. The articles specifically addressed plaintiff's appointment to represent a criminal defendant on appeal by a judge who was a personal friend of plaintiff, and charged that plaintiff had failed to raise on appeal a question of the misconduct of that trial judge. The newspaper asserted a qualified privilege defense, on the grounds that plaintiff was a public figure and that the publication was a matter of widespread public interest. The Court of Appeals found that plaintiff was not a public figure, but held that a qualified privilege did arise because of the public interest in the administration of justice. The court went on to hold that in order to defeat that qualified privilege, plaintiff had to prove "actual malice" as defined by the Supreme Court in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), that is, knowledge of falsity or reckless disregard for the truth.

Plaintiff argues that even though the general subject matter of the articles is one of public interest, Defendant exceeded the scope of any privilege when it used photographs of Plaintiff without any basis for concluding that Plaintiff was in fact engaged in soliciting for prostitution. It is an abuse of the "public interest" qualified privilege, Plaintiff argues, to use it to shield a defamation of a person unconnected with the subject matter of the article. Plaintiff distinguishes the *Peisner* case on the ground that there the plaintiff was specifically involved in the subject matter of the article. While the *Peisner* case held that the public interest in legal proceedings justified the application of the qualified privilege, Plaintiff argues that here different interests should be found controlling. Plaintiff points out that the interest of protecting persons from this kind of defamation is deemed so strong that it has been codified. M.S.A. § 27A.2911; M.C.L.A. § 600.2911. Plaintiff further argues that Defendant's affidavits indicate nothing

---

1. Since Plaintiff relies upon this issue as the basis for her summary judgment motion on all counts, Plaintiff's entire motion is precluded by this factual issue, and is therefore denied.

more than a speculation that Plaintiff was engaged in soliciting for prostitution.[2]

■ It is clear that apart from considerations of whether or not a privilege has been defeated by malice, the Court must consider whether the "occasion" of the publication gives rise to a qualified privilege. *Lawrence v. Fox,* 357 Mich. 134, 97 N.W.2d 719 (1959). *Lawrence* defines "occasion" to mean the extrinsic facts (people, time or place), as opposed to the specific content of the publication. 357 Mich. at 139, 140, 97 N.W.2d 719. Where the scope of the privilege does not cover the publication with regard to the Plaintiff, or when the occasion of the article does not include the questioned material, the privilege may be found inapplicable as to that aspect of the publication. *Bowerman v. Detroit Free Press,* 287 Mich. 443, 283 N.W. 642 (1939); *Clark v. American Broadcasting Companies, Inc.,* 684 F.2d 1208 (CA 6 1982).

■ The *Clark* case presents facts strikingly similar to those of the publication at issue here. The defendant in that case had aired a television documentary on the problem of prostitution in the street and its effect on the neighborhoods in which it occurred. During the course of the documentary, plaintiff Ruby Clark was shown walking down a Detroit street. The Court of Appeals held that the footage of the plaintiff, taken together with the narration, was capable of being interpreted as portraying plaintiff as a prostitute, and that the public interest qualified privilege did not extend to the use of plaintiff in the documentary. The court reasoned that as to the plaintiff, the film exceeded the scope of the qualified privilege, since plaintiff was not a prostitute, had not been interviewed herself in the documentary, and was not clearly involved in the issue in some way aside from being present in the neighborhood when the film was made.

The qualified privilege does not extend, however, to plaintiffs who are not the focus of the alleged public interest publication. A plaintiff who is merely an incidental figure in the broadcast is not, as a matter of law, within the scope of privilege. *See Timmis [v. Bennett],* 352 Mich. at 369, 89 N.W.2d 748. The policy underlying Michigan's qualified privilege is to promote reporting and comment about matters which are in the public interest. *Lawrence v. Fox,* 357 Mich. 134, 97 N.W.2d 719. If an individual is involved in some activity or proffers an opinion which is in the public interest, then a news story concerning that individual's activity or opinions is also in the public interest.

The same considerations do not apply where the plaintiff has only the most tenuous connection with the public interest subject matter. A newspaper or television broadcast concerning this incidental plaintiff is not in the public interest. The societal interests which the privilege protects are not furthered by expanding the scope of the privilege to include such individuals. Consequently, the scope of Michigan's qualified privilege does not encompass publications or broadcasts where the plaintiff is not the focus of the public interest publication. *Clark,* 684 F.2d at 1216.

The question of when a qualified privilege should attach, is one for the Court. *Lawrence v. Fox, supra,* 357 Mich. at 139, 140, 97 N.W.2d 719. But, where the circumstances surrounding the publication are factually disputed, the Court may not be able to decide this question on summary judgment. *Id.* at 140, 141, 97 N.W.2d 719. Here, the truth of the publication with regard to Plaintiff is disputed (see affidavits of Plaintiff and of Daniel Calkins); and it is a factual issue whether or not Plaintiff is recognizable in the photographs. Other evidence submitted for the Court's consideration further demonstrates the presence of factual issues regarding the connection of

---

**2.** Plaintiff has also argued that defamation *per se* somehow eliminates a defense of qualified privilege. However, defamation *per se* simply affects the requirement of proof as to damages, and does not avoid a qualified privilege. *Tumbarella v. The Kroger Company,* 85 Mich.App. 482, 271 N.W.2d 284 (1978).

Plaintiff to the subject matter of the article. The Muskegon Heights Police Chief, Willie R. Howell, attests, in an affidavit submitted by Plaintiff, that contrary to the statements made in the newspaper articles, he did not identify the Gay Nineties Bar as the center of prostitution, and that he informed reporter Robert Burns that prostitution activity was reported as occurring in several other businesses. Plaintiff, in her affidavit, states that she has never been a prostitute and she was not soliciting any person for purposes of prostitution at the time her photographs were taken. She identifies the other parties in the photographs as acquaintances. Plaintiff further states in her affidavit that "I live within one-quarter block of the intersection of Broadway and Peck, had lived there for several months prior to this incident and frequented that area by walking, since I do not have an auto, regularly shopping at the shops at the intersection including the drug stores, restaurants, and taverns."

The affidavits submitted by Defendant indicate that Defendant had no knowledge of the identity of the woman depicted in the photographs prior to the time of publication, and had no knowledge or information that the woman depicted was not a prostitute. (Affidavits of John Stephenson, Assistant Metro Editor; Robert Burns, Reporter; Greg Dorsett, Photographer; and George Arwady, Editor). Stephenson further attests that the articles and photographs were published as a matter of public interest and were based upon knowledge and information available to the newspaper at the time of publication. Reporter Robert Burns, in his affidavit, states that the Muskegon County Prosecutor had disclosed to Burns the existence of a problem of prostitution in the business district of Muskegon Heights and that law enforcement agencies and the prosecutor's office were trying to deal with the problem. Burns states that he interviewed "a number of witnesses and interested persons" in preparation for an article on the subject, however his affidavit does not disclose what particular information was obtained from those interviews. Burns states that he then met with other newspaper staff on September 11, 1981 at about 10:15 p.m. "for the purpose of photographing random night activities in the vicinity of the Muskegon Heights business district which *might* be consistent with the *thesis* that open prostitution was practiced in the area." (Emphasis supplied). Burns confirms that the photographs which appeared in the article were taken that evening; and he characterizes the photographs used as "fair and accurate depictions of the prostitution activity" he observed. As grounds for that conclusion, Burns refers to his observations that the woman in the photograph had gone in and out of a bar in a relatively short period of time and was attempting to carry on conversations with passers-by; that the bar was the one which had been reported to him by Captain Howell to be the center of prostitution in the area; that the woman in the photographs had a brief conversation with someone in a car, and Burns had been propositioned in such a manner by another woman in the same area a few days earlier; and that the woman in the photograph spoke with a man who also spoke with several other women during that time period. The affidavit of Greg Dorsett adds no further information in this regard.

Defendant's affidavits establish only a speculative connection between Plaintiff and prostitution activity. On the other hand, Plaintiff has offered facts which could suggest that her presence in the area at the time she was photographed was for entirely legitimate purposes. A speculative connection between the subject matter of the articles and Plaintiff is not sufficient to support a finding that the use of the photographs was within the scope of the public interest qualified privilege. Neither are the facts sufficiently undisputed as to justify a finding at this time that the scope of the privilege was clearly exceeded. This is a question which must be resolved with further fact development through discovery or after findings of fact by the jury.

Defendant's Motion for Summary Judgment on Plaintiff's defamation claim is predicated upon the existence of the quali-

fied privilege and a requirement that Plaintiff show Defendant acted with "actual malice." Because I am unable to determine at this time whether the publication of the photographs was qualifiedly privileged, Defendant's motion must be denied as to Plaintiff's Count I.[3]

## II. Negligent Infliction of Emotional Distress

Defendant argues that, for several reasons, Plaintiff's Count II for negligent infliction of emotional distress fails to state a claim and should be dismissed pursuant to Federal Rules of Civil Procedure (FRCP) 12(b)(6). Because Count II of the Complaint incorporates by reference the allegations of Count I (defamation), the Court must examine both Counts to determine if together they state a claim for negligent infliction of emotional distress.

In Count I, Plaintiff alleges that her photographs were used in connection with a publication on the subject of prostitution, that the implication from the publication is that Plaintiff was engaged in solicitation for prostitution, and as a result of the publication Plaintiff has suffered damages. Count I further alleges that the photographs were taken without Plaintiff's knowledge or consent, that Defendant knew or should have known that the publication would injure the Plaintiff, and that Defendant knew or should have known that the publication was false. In Count II, Plaintiff additionally alleges that Defendant failed to exercise reasonable care in investigating facts available to them, in failing to verify that Plaintiff was not soliciting for prostitution when she was photographed, and in failing to follow generally acceptable journalistic standards in preparing, editing and publishing the photographs and articles. Plaintiff alleges that in failing to verify the fairness and accuracy of the publication, Defendant breached this legal duty. Plaintiff also alleges that Defendant was negligent in failing to properly conceal the identity of Plaintiff in the photographs as published. Plaintiff alleges that injury to the Plaintiff was foreseeable, and that as a direct and proximate result of the negligence of Defendant, Plaintiff suffered emotional injury.

### A. Scope of the Tort of Negligent Infliction of Emotional Distress

■ Defendant argues that the tort of negligent infliction of emotional distress is confined to those instances when Plaintiff suffers an emotional shock as the result of witnessing the negligent injury of a close relative; since this case does not fit the "third party injury" mold, Defendant argues, Plaintiffs' allegations fail to state a claim. Furthermore, Defendant claims that the Michigan courts have indicated a reluctance to extend the tort beyond these narrow limits.

The majority of Michigan cases dealing with the tort of negligent infliction of emotional distress do involve the third party injury situation. *See, e.g., Toms v. McConnell,* 45 Mich.App. 647, 207 N.W.2d 140 (1973); *Gustafson v. Faris,* 67 Mich.App. 363, 241 N.W.2d 208 (1976); and *Perlmutter v. Whitney,* 60 Mich.App. 268, 230 N.W.2d 390 (1975). However, the Michigan Supreme Court has clearly recognized that when emotional shock is inflicted on the plaintiff by negligent conduct of the defendant which is felt directly by the plaintiff, a cause of action may lie for emotional distress. *Daley v. LaCroix,* 384 Mich. 4, 179 N.W.2d 390 (1970); *and see, Allinger v. Kell,* 102 Mich.App. 798, 302 N.W.2d 576, *modified on other grounds,* 411 Mich. 1053, 309 N.W.2d 547 (1981). In *Daley* the court held that plaintiffs stated a claim for negligent infliction of emotional distress, even though no third party was involved. Plaintiffs alleged that they suffered an emotional shock when defendant's car negligently struck a utility pole, which brought down electrical lines and caused an electrical ex-

---

**3.** Note that even if a qualified privilege arises as to publication of the photographs, "actual malice" may not be the correct standard of fault. *See* this Court's Opinion on summary judgment motions in the closely related case of *Apostle v. Booth Newspapers, Inc.,* 572 F.Supp. 897, issued January 31, 1983.

plosion at plaintiffs' house when they were inside. While the instant case presents a factual context distinct from that of *Daley,* the underlying claim of emotional injury felt as the direct result of Defendant's conduct, is the same.

Defendant's argument that the courts are reluctant to apply this tort to new cases is not persuasive in this instance. Michigan courts have been willing to impose limitations on the tort in the third party injury context, where there would otherwise be potentially unending liability for the "shock waves" which flow outward infinitely from an injury. The same analysis does not apply when no third party is involved, as here. Furthermore, in at least one case, the Court has noted in the third party injury context that the courts of this state are always ready to give a remedy where a wrong has been committed, and that a "floodgates" argument will not dissuade them from that result. *Toms v. McConnell, supra.*

I find that Plaintiff's allegations fall within the scope of the tort of negligent infliction of emotional distress, as defined by the Michigan courts.

### B. Necessity of Allegations of Physical Injury

■ One of the required elements of the tort of negligent infliction of emotional distress in this state is "a definite and objective physical injury ... produced as a result of emotional distress proximately caused by defendant's negligent conduct...." *Daley v. LaCroix, supra,* 384 Mich. at 12, 179 N.W.2d 390. By contrast, when the infliction of emotional distress is *intentional,* no physical injury is required. *See, e.g., Warren v. June's Mobile Home Village and Sales, Inc.,* 66 Mich.App. 386, 239 N.W.2d 380 (1976). Defendant argues that Plaintiff's Complaint fails to state a claim because physical injury is not adequately alleged. Paragraph 33 of Count II of Plaintiff's Complaint states, in pertinent part:

33. ... the plaintiff herein was by the publication of the photograph and article directly and proximately caused intense

and severe emotional distress, emotional suffering, emotional injury and damage, past, present and future.

Paragraph 28 of Count I, incorporated by reference into Count II, alleges:

28. As a result of such defamatory statement and picture, the plaintiff has suffered emotional and mental distress, anxiety, aggravation, physical distress, pain and suffering, embarrassment, scorn, mental anguish, and humiliation, past, present, and future.

■ While a "definite and objective physical injury" is required, the courts are very lenient in finding allegations sufficient in this regard. In *Daley v. LaCroix, supra,* the court held that an allegation of nervousness caused by the emotional shock was a borderline allegation, but that it presented a jury question on the issue of physical injury when viewed in the light most favorable to plaintiff. The other plaintiff in the *Daley* case had allegedly suffered weight loss, inability to perform ordinary household duties, extreme nervousness and irritability, and traumatic neurosis; this was held to clearly satisfy the leading requirements of physical injury. Similarly, in *Toms v. McConnell, supra,* the court held that allegations that plaintiff could not function and was in a continued state of depression were sufficient to state a claim. Of course, as the court pointed out in *Daley,* even given this lenient standard, a plaintiff still has to show that the physical harm is the natural result of the emotional shock proximately caused by defendant's conduct.

■ The allegations in paragraph 33 of Plaintiff's Complaint do not meet the pleading requirement described by these cases. Neither does the general allegation in paragraph 28 of physical distress, pain and suffering, sufficiently allege a definite and objective physical injury. However, in response to Defendant's motion, Plaintiff has submitted an affidavit which alleges that for two weeks after the publication, Plaintiff "suffered great physical distress and injury consisting of lost appetite, nausea in my stomach, tremor and shakes, I became a complete recluse and functioned on continu-

al daze as if in a comatose state." This allegation of physical injury does satisfy the pleading requirement of the Michigan cases.

Rule 12(b) allows the Court to consider materials outside the pleadings, when presented to the Court on a Motion to Dismiss for failure to state a claim. When such materials are considered, the motion is to be treated as one for summary judgment. Accordingly, the affidavit submitted by Plaintiff has transformed this motion into one for summary judgment. On the basis of the affidavit the Court finds that Plaintiff has adequately alleged definite and objective physical injury such that Defendant is not entitled to prevail as a matter of law; rather, the issue must be decided by the jury.

## C. Validity of a Negligence Standard of Liability in Light of Defendant's Claim of Qualified Privilege

■ Defendant argues that: Plaintiff's defamation claim is subject to a qualified privilege of Defendant, because the subject matter of the publication was of public interest; that Plaintiff is therefore required to show that Defendant acted with knowledge of the falsity of the articles or with reckless disregard for the truth, in order to prevail on the defamation claim; that Plaintiff's negligent infliction claim is based on the same grounds as the defamation claim; and therefore, to allow a negligence standard of liability to apply to Defendant's conduct is to circumvent the law of privilege in defamation. Since negligence does not meet the actual malice standard, Defendant argues that by definition a negligence claim is precluded.

Plaintiff argues that defamation and negligent infliction are two separate and distinct torts, based upon protection of distinct interests, reputation and emotional well-being, respectively.[4]

Where both defamation and a similar tort arise out of the same facts, consistency requires that the same standard of fault be applied to both torts. *See Fitzgerald v. Penthouse International, Ltd.,* 525 F.Supp. 585 (D.C.Md.1981); *Dresbach v. Doubleday & Company, Inc.,* 518 F.Supp. 1285 (D.C.D. C.1981); *and see* this Court's discussion of the question in its January 31, 1983 opinion in *Apostle v. Booth Newspapers,* 572 F.Supp. at page 905. But because factual issues prevent the Court from determining whether or not a qualified privilege protects the publication in this case (see discussion, § I, *supra* ), I cannot say at this time that Count II is precluded as presenting a standard of liability inconsistent with that required in Count I. For that reason, Defendant's motion in this regard, must be denied.

## III. Intentional Infliction of Emotional Distress

Plaintiff's Count III for intentional infliction of emotional distress incorporates the allegations of the defamation claim (Count I) which are described above. Count III additionally alleges that Defendant knew or should have known that Plaintiff was not soliciting for prostitution at the time her photograph was taken, and that the implication of the publication was untrue as it related to Plaintiff. Plaintiff further alleges that the publication was made with an intent to harm the Plaintiff's emotional well being, and did in fact cause emotional harm to Plaintiff.

Defendant has moved for summary judgment on this Count, and makes three arguments: (1) that as a matter of law Defendant's conduct could not reasonably be found to be extreme and outrageous; (2) that there is no evidence of injurious intent or reckless disregard for the consequences of the publication; and (3) that the publication was privileged and therefore no cause of action for intentional infliction of emotional distress may prevail.

---

**4.** Plaintiff also argues that FRCP 8(e) gives her the right to plead both theories, even if inconsistent. Defendant's argument is not a procedural one. Rather, Defendant seeks a ruling that *as a matter of law* a negligence claim may not be stated against it, because a qualified privilege defeats the tort in this instance. Rule 8(e) does not respond to the thrust of this argument.

## A. Extreme and Outrageous Conduct

It is undisputed that Michigan recognizes the tort of intentional infliction of emotional distress, as defined by the Restatement (2d) Torts, § 46. *Frishett v. State Farm Mutual Automobile Insurance Company,* 3 Mich.App. 688, 143 N.W.2d 612 (1966); *Warren v. June's Mobile Home Village and Sales, Inc., supra.* The restatement definition of the tort contains four elements: (1) "extreme and outrageous" conduct; (2) injurious intent or reckless disregard for the consequences of acts; (3) causation; and (4) the actual experience of severe emotional distress. The Complaint must show evidence of all four of these in order for the claim to go to the jury. *Ross v. Burns,* 612 F.2d 271 (CA 6 1980). The *Frishett* and *Warren* cases explicitly adopt the standards discussed in the restatement to determine whether conduct is "extreme and outrageous":

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Restatement (2d), Tort, § 46, comment d.

Defendant argues that as a matter of law the publication of the articles and photographs does not rise to the level of "extreme and outrageous" conduct required by the tort of intentional infliction of emotional distress, even taking the allegations of Plaintiff's Complaint as true. Plaintiff, on the other hand, argues that the conclusion that Defendant's conduct is extreme and outrageous, is inevitable.

The gap between conduct which leads one to exclaim "outrageous," and conduct which can be characterized as "petty oppression," is a large one, and has led the courts to both deny and grant motions for summary judgment on this point. In *Frishett v. State Farm Mutual Automobile Insurance Company, supra,* the Michigan Court of Appeals reversed a summary judgment against plaintiff, holding that plaintiff stated a claim for intentional infliction of emotional distress. Plaintiff alleged that she was in a car accident where her husband was killed and her daughter injured; that defendant insurer was the carrier for both cars involved in the accident; and that defendant had made false statements, unjustly withheld medical payments, and that its agents had obtained private information for the insurer to use in its role as insurer for the other car. A summary judgment was also reversed by the Court of Appeals in *Ledsinger v. Burmeister,* 114 Mich.App. 12, 318 N.W.2d 558 (1982). The court in that case held that where plaintiff had gone into defendant's store to pick up some car parts and defendant allegedly called plaintiff a "nigger" and told plaintiff to get his "black ass" out of the store and said that he did not need "nigger" business, the court could not say that as a matter of law it was not extreme and outrageous. The court noted that the language used should be viewed in its context, and that the court should also take into consideration the fact of abuse of a relationship, such as that of a merchant to a customer.

In *Fry v. Ionia Sentinel-Standard,* 101 Mich.App. 725, 300 N.W.2d 687 (1980), the court held that defendant publisher's conduct could not be characterized as outrageous. Defendant had printed a story about the death of plaintiff's husband in a fire. The story identified plaintiff as the man's wife, and also stated that another body, of a woman, was found with the body

of plaintiff's husband and that that woman had been seen with plaintiff's husband earlier that evening in a nearby bar. Similarly, in *Ross v. Burns, supra,* the Sixth Circuit, applying Michigan law, held that an undercover narcotics agent did not show extreme and outrageous conduct where two newspaper reporters took his picture and ran a story decrying the use of undercover narcotics agents and used the caption "know your enemies" with the agent's picture. In that case the court noted that the news article was on a topic of current controversy, and viewing the conduct element of the tort separately from intent issues, reversed the lower court's denial of a motion for a judgment n.o.v.

While the Court may in some cases resolve this question on a Motion for Summary Judgment, summary judgment is not appropriate where the facts surrounding the conduct are contested. In this case, the conduct at issue includes not only the impression caused by the photographs as published, but the surrounding circumstances which led the Defendant to photograph Plaintiff and select those photographs for publication. As discussed above, those circumstances, and the reasonableness of Defendant's conduct, are contested. Although the court in *Ross v. Burns, supra,* held that as a matter of law defendant's conduct was not extreme and outrageous, the court had the benefit of making that determination in light of all of the testimony adduced at trial, since the ruling was on a motion for a judgment n.o.v. And in *Fry v. Ionia Sentinel-Standard, supra,* where the court also upheld a summary judgment for defendant, there was no dispute that the facts contained in the publication were true. For those reasons, the instant case is distinguishable, and Defendant's Motion for Summary Judgment on this ground is denied.

## B. *Injurious Intent or Reckless Disregard*

■ Defendant argues that Plaintiff has failed to show any evidence that Defendant acted with an injurious intent or with reckless disregard for the consequences of the act of publishing the photographs. Defendant argues that because great care was used in altering the original photographs to obscure the identity of the woman in the photographs, there is a clear lack of injurious intent or recklessness. However, while Plaintiff has not disputed the fact that the photographs were retouched, this is not the only factor to be considered. Fact issues have been raised with regard to the basis for Defendant's decision to photograph Plaintiff and to publish the photographs in connection with the article on prostitution. The question of whether or not Plaintiff's identity was adequately obscured is also a question of fact. Plaintiff has sufficiently raised factual issues which preclude summary judgment for Defendant on this theory.

## C. *The Application of Privilege to this Claim*

■ Defendant argues that regardless of whether its conduct may be considered extreme and outrageous, the publication is protected by a common law privilege. In *Frishett v. State Farm Mutual Automobile Insurance Company, supra,* the court quoted the principle of liability for intentional infliction of emotional distress enunciated in the Restatement of the Law, 1948 (Supp.), Torts, § 46:

> One who, *without a privilege to do so,* intentionally causes severe emotional distress to another is liable (a) for such emotional distress, and (b) for bodily harm resulting from it. 3 Mich.App. at 692, 143 N.W.2d 612 (emphasis added).

The Restatement of the Law, (2d), Torts, § 46, does not include the reference to privilege contained in the 1948 definition of the tort. However, the Michigan Court of Appeals, in adopting the Restatement (2d) definition of the tort in *Warren v. June's Mobile Home Village, supra,* noted that the new language did not represent a substantive change from the language quoted in *Frishett.* 66 Mich.App. at 390 fn. 1, 239 N.W.2d 380. The question of privilege in the context of intentional infliction of emotional distress is discussed in comment (g)

to § 46 of the Restatement (2d) Torts. According to the commentators, although conduct may be extreme and outrageous, it may be privileged under the circumstances. Examples given include a case where the defendant has done no more than insist on his legal rights in a permissible way, or where the conduct is taken as self-defense, or in reaction to an extreme provocation. The comment makes no reference to privilege as it is used in the context of defamation actions. Defendant relies upon the Restatement (2d), Torts, § 10, which defines common law privilege generally, as it is used throughout the restatement:

> (2) a privilege may be based upon . . . (b) the fact that its exercise is necessary for the protection of some interest of the actor or of the public which is of such importance as to justify the harm caused or threatened by its exercise. . . .

To the extent Defendant argues that a common law privilege here results in an absolute defense, Defendant cites no cases in support of the proposition, and the Court is aware of none. Although the court in *Fry v. Ionia Sentinel-Standard, supra,* rejected plaintiff's claim of intentional infliction of emotional distress, that rejection was not based upon a perceived absolute privilege on the part of the defendant newspaper to publish the article. I am not persuaded that a general definition of privilege, read together with the language of the restatement on intentional infliction of emotional harm, gives rise to an absolute defense to this cause of action.

To the extent Defendant argues that a *qualified* privilege arises for the newspaper in this context, there is a similar scarcity of authority. In *Meyer v. Hubbell,* 117 Mich. App. 699, 324 N.W.2d 139 (1982), the Court of Appeals held that the circuit court had correctly denied a motion of plaintiff to state a claim for intentional infliction of emotional distress. In reaching that conclusion, the court, found *inter alia,* that since there was a privilege for defendant to faithfully and fairly report court proceedings, the defendant's conduct was not extreme or outrageous. That case did not involve a question of the falsity of factual statements, or a reckless disregard for the truth, since it was uncontested that defendant had merely distributed copies of a court opinion.

In the present case, the falsity of the implication of the publication, and the conduct surrounding the publication of the photographs, are factually contested. Moreover, the scope of any privilege which may have attached to the subject of the article generally, may have been exceeded by Defendant's conduct with regard to Plaintiff. As noted above, the Court is unable to determine the applicability of a qualified privilege in this case due to factual issues. For these reasons, summary judgment on this Court, must be denied.

### IV. Invasion of Privacy

Plaintiff alleges in Count IV of her Complaint that the use of her photograph was unreasonable and a serious interference with her right to privacy in that the publication portrayed Plaintiff in a "false light," and was an appropriation of her likeness without Plaintiff's permission. Plaintiff alleges that as the result of this invasion of her privacy she suffered emotional distress, loss of enjoyment of life, anxiety, emotional illness, embarrassment, and loss of reputation. Count IV also incorporates allegations of Count I.

Defendant moves for summary judgment on this Count, arguing that (1) since Plaintiff is not recognizable, there can be no claim for invasion of privacy; (2) the publication is not actionable because Plaintiff left herself open to the public eye; and (3) Plaintiff is required to make a showing of actual malice, and has failed to do so.

The tort of invasion of privacy is clearly recognized by the Michigan courts. *Beaumont v. Brown,* 401 Mich. 80, 95, 257 N.W.2d 522 (1977). Prosser describes four types of invasion of privacy: (1) the appropriation for the defendant's benefit or advantages, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) disclosure of private information; and (4) publicity

which places plaintiff in a false light in the public eye. Prosser *Torts,* (4th Ed.) § 117, pp. 804–812. *And see, Beaumont v. Brown,* 401 Mich. at 95, 257 N.W.2d 522. Because Plaintiff has chosen in her brief to rest only upon "false light" invasion of privacy, the Court will address only that aspect of the tort.

Since recognition of the Plaintiff is an inherent element of a false light invasion of privacy claim, Defendant's motion cannot be granted on this ground because it presents a contested fact issue. Defendant next argues that it cannot be held liable for what Plaintiff chose to expose to the public eye. Defendant relies upon *Fry v. Ionia Sentinel-Standard, supra,* for that proposition. However, that case involved a claim grounded on the public disclosure of embarrassing private facts, and was not a "false light" claim. As Plaintiff observes, the use of the photographs of Plaintiff in the present case is alleged as a classical false light case. The Restatement of Torts (2d) § 652E uses the following illustration to describe the "false light" aspect of invasion of privacy:

> A is a taxi driver in the city of Washington. B newspaper publishes an article on the practices of Washington taxi drivers in cheating the public on fares, and makes use of A's photograph to illustrate the article, with the implication that he is one of the drivers who engages in these practices. A never has done so. B is subject to liability to A for both libel and invasion of privacy. *Id.* at 395.

It is conceded for the purpose of this motion that the implication of the publication was that Plaintiff was soliciting for prostitution; the truth of the publication has been contested by Plaintiff in her affidavit, and presents a jury question. The fact that Plaintiff's photograph was taken in public does not preclude her false light claim.

Defendant argues that regardless of whether Plaintiff may have been put in a false light, a qualified privilege protects the publication and requires Plaintiff to show actual knowledge of falsity of the publica-tion or a reckless disregard for the truth. Defendant relies upon the United States Supreme Court case of *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1966). In that case the Supreme Court held that a qualified privilege attached to a review of a play which stated that the play was a reenactment of the experience of the plaintiffs, who had some years before been held hostage by escaped convicts. The court found the claim analogous to the defamation claim in *New York Times v. Sullivan, supra,* and applied the *New York Times* "actual malice" standard of fault. The Court reasoned that the actual malice standard should apply, since the review was of public interest; the court also noted that plaintiffs were public figures, although involuntarily so. In the later case of *Gertz v. Welch, supra,* the Supreme Court restricted its actual malice test in the area of defamation law to those cases which involved public figures or public officials. In reaching that holding, the court rejected a "public interest" test for determining the applicability of the actual malice standard of fault. The effect of *Gertz v. Welch* on the holding of *Time, Inc. v. Hill,* as it applies to private individuals suing under a false light theory for invasion of privacy, has not been resolved by the Supreme Court. *See, Cantrell v. Forest City Publishing Company,* 419 U.S. 245, 250–251, 95 S.Ct. 465, 469–470, 42 L.Ed.2d 419 (1974).

According to the Restatement (2d) Torts, § 652G, the rules on conditional privileges to publish defamatory matter apply equally to the publication of matter which constitutes an invasion of privacy. Because in this case, contested fact issues preclude a finding at this time of whether or not the scope of a public interest qualified privilege has been exceeded by Defendant, the standard of fault by which Defendant's conduct will be judged, is as yet unresolved. Defendant's Motion for Summary Judgment on this ground is therefore denied.

### V. Conclusion

For the reasons discussed in this Opinion, the cross-Motions for Summary Judgment by Defendant and Plaintiff, are denied.