**TAFT BROADCASTING COMPANY,**
Plaintiff–Appellee,

v.

**UNITED STATES of America,**
Defendant–Appellant.

No. 88–3720.

United States Court of Appeals,
Sixth Circuit.

Argued April 14, 1989.

Decided March 27, 1991.

James J. Ryan and James H. Brun (argued), Taft, Stettinius & Hollister, Cincinnati, Ohio, for plaintiff-appellee.

Robin L. Greenhouse, U.S. Dept. of Justice, Tax Div., Gary R. Allen, Acting Chief, William S. Rose, Robert S. Pomerance, and John A. Dudeck (argued), U.S. Department of Justice, Appellate Section Tax Div., Washington, D.C., for defendant-appellant.

Before RYAN and NORRIS, Circuit Judges, and TURNER, District Judge.[*]

TURNER, District Judge.

This appeal is brought by the United States following the entry of summary judgment by the district court in favor of the taxpayer, Taft Broadcasting Company, on its claim for a tax refund in the amount of $585,404. 685 F.Supp. 1033. The outcome in this case turns on whether the taxpayer is entitled under 26 U.S.C. § 1033 to nonrecognition of gain it realized when it sold two radio stations in its 1973 tax year. The trial court determined on cross-motions for summary judgment that the taxpayer was entitled to nonrecognition of its gain and therefore to the refund. We reverse and remand for further proceedings.

## STIPULATED FACTS

The facts in this record were stipulated in writing and filed by the parties prior to their filing of cross-motions for summary judgment. The facts as stipulated provide in part as follows:

In 1957, the taxpayer acquired two radio stations in Birmingham, Alabama. On March 31, 1973, which was the end of taxpayer's 1973 tax year, the taxpayer had an adjusted basis of $388,817 in the two radio stations. During the 1973 tax year, the taxpayer sold the two radio stations for $2,050,000 in a sale certified by the Federal Communications Commission and realized a capital gain on that sale of $1,633,456.

The taxpayer elected to apply the nonrecognition of gain provisions of Internal Revenue Code section 1033, as modified by section 1071, and stated its intent to purchase property of "like kind," as required for nonrecognition of gain, within the allowable two-year period. On July 29, 1974, the taxpayer entered into an Asset Purchase Agreement ("Agreement") to acquire two radio stations in Pittsburgh, Pennsylvania for the price of $3,500,000. The Agreement permitted the taxpayer to assign its rights under the Agreement to a wholly-owned subsidiary and on October 17, 1974, the taxpayer's Board of Directors authorized the incorporation of a wholly-owned subsidiary and the assignment of taxpayer's rights under the Agreement to that subsidiary. The next day the incorporation papers were filed under the name of Taft Broadcasting Company of Pennsylvania, Inc., and on October 22, 1974, the taxpayer "purchased" 100 shares of stock in the newly formed corporation for $1,000 and assigned its rights under the Agreement to the newly formed corporation, Taft Broadcasting Company of Pennsylvania, Inc. ("Taft of Pennsylvania"). On December 16, 1974, the newly formed corporation acquired title to the two radio stations in Pittsburgh which were the subject of the Agreement. On the next day, the taxpayer purchased additional stock in and from Taft of Pennsylvania for $2,049,000 and made a loan to Taft of Pennsylvania in the amount of $1,555,751. On that date, December 17, 1974, Taft of Pennsylvania completed payment for and "owned and operated" the two radio stations in Pittsburgh.

Thereafter the taxpayer claimed a refund for its 1973 tax year on other income taxes paid by it. The Internal Revenue Service disallowed the claimed refund to the extent of $585,404, taking the position that the taxpayer was not entitled to nonrecognition of the gain realized from the sale of the Birmingham radio stations. This suit resulted.

Section 1033[1] of the Internal Revenue Code deals with nonrecognition for income tax purposes of gain resulting from the involuntary conversion of properties owned

---

[*] The Honorable Jerome Turner, United States District Judge for the Western District of Tennessee, sitting by designation.

1. The relevant portions of 26 U.S.C. § 1033 during the applicable time provided:

   (a) *General Rule.*

If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

. . . .

by the taxpayer; essentially it allows the nonrecognition of gain realized from an involuntary conversion of property into similar property within a two year period.

Section 1071(a)[2] provides that if the Federal Communications Commission (F.C.C.) certifies that a sale of property is necessary or appropriate to effectuate a change of F.C.C. policy or the adoption of a new policy, the taxpayer may elect to treat the sale as an involuntary conversion under section 1033.

The issues in this case do not involve any question about whether the Pittsburgh radio stations were similar properties; nor is there any question about whether the F.C.C. certified the sale of the Birmingham stations. These facts are undisputed.

### THE ISSUES

The issues presented on this appeal by the government are twofold:

(1) Whether the taxpayer should be denied nonrecognition treatment under sections 1033 and 1071 because it did not acquire the subsidiary's stock by a "purchase" within the meaning of section 1033(a)(2)(A)(ii) of the statute;

(2) Whether the taxpayer should be denied nonrecognition treatment under sections 1033 and 1071 because Taft of Pennsylvania was not "operating" a radio station when taxpayer acquired its stock.

### TAXPAYER'S "PURCHASE" OF STOCK

■ As to the first issue the government contends that the taxpayer is not entitled to nonrecognition treatment because it did not "purchase" the stock of the subsidiary as that term is used in the statute. The government argues that section

(3). *Conversion into money.* Into money or into property not similar or related in service or use to the converted property, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) Nonrecognition of gain. If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary may by regulations prescribe. For purposes of this paragraph—

. . . .

(ii) the taxpayer shall be considered to have purchased property or stock only if, but for the provisions of subsection (b) of this section, the unadjusted basis of such property or stock would be its cost within the meaning of section 1012.

**2.** Section 1071 of the Internal Revenue Code in the applicable time period provided:

*Sec. 1071. Gain from sale or exchange to effectuate policies of F.C.C.*
(a) *Nonrecognition of gain or loss.*
If the sale or exchange of property (including stock in a corporation) is certified by the Federal Communications Commission to be

necessary or appropriate to effectuate a change in a policy of, or the adoption of a new policy by, the Commission with respect to the ownership and control of radio broadcasting stations, such sale or exchange shall, if the taxpayer so elects, be treated as an involuntary conversion of such property within the meaning of section 1033. For purposes of such section as made applicable by the provisions of this section, stock of a corporation operating a radio broadcasting station, whether or not representing control of such corporation, shall be treated as property similar or related in service or use to the property so converted. The part of the gain, if any, on such sale or exchange to which section 1033 is not applied shall nevertheless not be recognized, if the taxpayer so elects, to the extent that it is applied to reduce the basis for determining gain or loss on sale or exchange of property, of a character subject to the allowance for depreciation under section 167, remaining in the hands of the taxpayer immediately after the sale or exchange, or acquired in the same taxable year. The manner and amount of such reduction shall be determined under regulations prescribed by the Secretary or his delegate. Any election made by the taxpayer under this section shall be made by a statement to that effect in his return for the taxable year in which the sale or exchange takes place, and such election shall be binding for the taxable year and all subsequent taxable years.
(b) *Basis.*
For basis of property acquired on a sale or exchange treated as an involuntary conversion under subsection (a), see section 1033(c).

1033(a)(2)(A)(ii) [3] grants nonrecognition of the gain from the prior involuntary disposition of assets only if the property used by the taxpayer to replace the disposed assets is acquired by "purchase" and there is no purchase under section 1033(a)(2)(A)(ii) unless the basis of the replacement property in taxpayer's hands "would be its cost within the meaning of section 1012." Section 1012 provides that the basis of property shall be its cost except as otherwise provided in subchapter C, among others. The government contends that the basis of the stock acquired by the taxpayer in its subsidiary, Taft of Pennsylvania, was not determined by its cost under section 1012, but by its carryover basis under section 358 of subchapter C. Section 358 provides that the basis of a shareholder's stock acquired under section 351 is the same as the property exchanged for the stock. Here the property exchanged for the stock was $2,050,000 which is the amount of cash paid for the stock and thus the basis of the stock, if determined under section 358, would be $2,050,000.

In response to the government's position on this first issue, the taxpayer contends that:

(1) this issue was not raised before the district judge and should therefore not be considered on appeal;

(2) the parties stipulated that the taxpayer had purchased the stock; and

(3) the stock was purchased within the meaning of section 1033.

Having anticipated the taxpayer's argument that this issue should not be heard for the first time in the appellate court, the government in its brief admitted: "We recognize that the Government did not draw the District Court's attention to Section 1033's definition of purchase, and the Court evidently remained unaware of it. But this does not preclude our raising the issue now." The government argued that this issue does not present a new argument but another reason to accept the argument made by the government before the district

court. In the district court the government advocated that the taxpayer's acquisition of stock in its subsidiary on December 17, 1974, for $2,049,000, was merely a contribution to capital of the subsidiary and not an acquisition of a corporation; the government argued that an acquisition is required by section 1033 in order to utilize the nonrecognition of gain provisions of the statute. The district judge dealt with this contribution question in his opinion where he concluded that section 1071 modified the requirements of section 1033 to eliminate any requirement that the taxpayer acquire control of the corporation or actually acquire the corporation itself, rather than simply purchase stock in that corporation.

It stretches the issues beyond recognition to suggest that the issue of whether the taxpayer was required to acquire a corporation or simply buy its stock is the same as whether the determination of the basis of the stock in the hands of the taxpayer under section 358 precludes the transaction from being a "purchase." The issues are not the same and the issue which the government attempts to raise now for the first time in the appellate court was not presented to the district court.

■ A long line of cases in this circuit strongly reinforces the principle that issues not litigated in the trial court are generally not appropriate for appellate consideration in the first instance.

As a rule, this court declines to entertain arguments not presented in the first instance to the district court.

*Meador v. Cabinet for Human Resources,* 902 F.2d 474, 477 (6th Cir.1990), *petition for cert. denied* — U.S. —, 111 S.Ct. 182, 112 L.Ed.2d 145 (quoting from *Newmyer v. Philatelic Leasing, Ltd.,* 888 F.2d 385, 397 (6th Cir.1989)).

We need not, however, address taxpayer's argument. The general rule is that issues not raised before the Tax Court are inappropriate for appellate consideration.

---

**3.** *Section 1033(a)(2)(A)(ii) states: "the taxpayer shall be considered to have purchased property or stock only if, but for the provisions of subsection (b) of this section, the unadjusted basis of such property or stock would be its cost within the meaning of section 1012."*

*Roth Steel Tube Co. v. C.I.R.*, 800 F.2d 625, 632 (6th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987).

This Court, however, will generally not consider questions not raised in the court below.

*Russ' Kwik Car Wash v. Marathon Petroleum Co.*, 772 F.2d 214, 217 (6th Cir.1985).

In the interests of judicial economy and the finality of judgments, and mindful of our role as an appellate court, we have declined to review arguments not presented to the district court in the first instance (citations omitted). Therefore, since Sigmon Fuel failed to press its entitlement to interest under federal common law before the district court, we do not consider that argument on appeal.

*Sigmon Fuel Co. v. Tennessee Valley Authority*, 754 F.2d 162, 164–65 (6th Cir.1985).

The clear rule is that appellate courts do not consider issues not presented to the district court.

*Brown v. Marshall*, 704 F.2d 333, 334 (6th Cir.), *cert. denied*, 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 119 (1983).

Upon reflection, however, we conclude that we should not pass upon this issue since it was not raised in the district court.

*Bannert v. American Can Co.*, 525 F.2d 104, 111 (6th Cir.1975), *cert. denied*, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).

This Court requires that an issue be raised in the District Court before it will be considered on appeal.

*Schneider v. Electric Auto–Lite Co.*, 456 F.2d 366, 375 (6th Cir.1972).

Despite this lengthy and authoritative line of cases that recognize the general rule, many decisions in this circuit have expressed a willingness and found reason to take up issues raised for the first time during the process of appeal. In *Frederick Steel Co. v. C.I.R.*, 375 F.2d 351, 355 (6th Cir.), *cert. denied*, 389 U.S. 901, 88 S.Ct. 219, 19 L.Ed.2d 217 (1967), this court pronounced: "As to any rule against raising new issues on appeal, we are of the view that the merits of petitioner's contention should be passed upon." Likewise, in

*Black Motor Co. v. Commissioner*, 125 F.2d 977, 980 (6th Cir.1942), the court noted: "The fact that the issue was not raised in the petition to the Board is immaterial and, under the circumstances here present, we have jurisdiction of the issue."

In *United States v. Baker*, 807 F.2d 1315, 1321 (6th Cir.1986), the court held:

While courts of appeals generally refuse to consider issues not passed upon by lower courts ... [i]n the instant case, substantial questions have been raised regarding the propriety of appellant's commitment; because of the significance of appellant's liberty interest at stake, we find it necessary to address appellant's claims in order to "prevent manifest injustice and to promote procedural efficiency." (citation omitted). We recognize this to be a very limited exception to our previous pronouncement in *Sigmon Fuel.*

In *Meador*, 902 F.2d at 477, the court noted: "A federal appellate court can resolve an issue not passed on below 'where the proper resolution is beyond any doubt or where injustice ... might otherwise result.' "

Little discussion or analysis has accompanied the court's earlier decisions on this question. The fact that the issue newly raised on appeal requires or necessitates a determination of facts is generally deemed good reason to refuse consideration of the issue for the first time in the appellate court. *Roth Steel*, 800 F.2d at 632; *Russ' Kwik Car Wash*, 772 F.2d at 217. Concurrently, the fact that the issue presents only a question of law has sufficed to convince the court on occasion to undertake a consideration of the newly presented issue. "The issue raised is purely one of law requiring no new or amplified factual determination." *Black Motor Co.*, 125 F.2d at 980.

The Supreme Court has also ruled on issues that were not presented to the trial court. In *United States v. Bess*, 357 U.S. 51, 54–55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958), the court held:

As to the tax lien theory, Mrs. Bess contends that the Government did not

assert this basis for recovery before the District Court and therefore should not be heard to assert that theory in this Court. But the essential facts pertinent to a decision on the merits of the tax lien theory were stipulated in the District Court. Moreover, the issue was fully briefed and argued both in the Court of Appeals and in this Court. We therefore see no basis for any inference of prejudice in the circumstances, and accordingly proceed to a determination of the question.

Taxpayer suggests that the factual record before this court is insufficient to permit the court to sustain the government's first argument on the issue of whether the stock acquisition constituted a "purchase" within the meaning of the applicable code section; it points out that nothing in the record establishes that the taxpayer maintained the requisite control of the subsidiary as of the date it acquired the Taft of Pennsylvania stock within the meaning of section 351. The government counters that the requisite factual information may be inferred from the present record and indeed the parties, not faced with the new issue being presented to this court for the first time, acted on the assumption that the acquired company was at all times wholly-owned by taxpayer.

Taxpayer does not attempt to assert to the court that had it had the opportunity in the court below, it would have produced additional factual proof to rebut the newly asserted government position. Given the questionable factual state of the current record, however, the court doubts that the factual record would have remained identical had the district court been presented with the issue now raised for the first time.

Moreover, it cannot be argued convincingly that the proper resolution of this new issue is clear and beyond doubt. The issue is complex and has little precedent to support either position. Its resolution may well turn on the disputed meaning of the word "purchases" as used in section 1033 versus that used by the parties in their stipulation of facts that was developed at the trial level before this issue was asserted by the government.

Additionally, there can be little argument that a failure to take up this issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice. Procedures for the development of the government's defense in this civil lawsuit to taxpayer's claim for a refund were available; no explanation is offered for the failure to raise the issue below. If the government failed to raise all of its defenses and would thus have to refund the collected taxes, no injustice would occur.

Perhaps more important is the fact that the parties were entitled under our judicial system to have the issues in this suit considered initially by the district judge; his valued judgment adds much to the deliberative process and allows this court its proper function—to determine if an erroneous decision was made as to the issues presented. There is no basis here to deny those procedures and that level of decision making to either party. For these reasons the court declines to undertake consideration of the issue of whether the taxpayer "purchased" the subsidiary's stock.

## SUBSIDIARY'S OPERATION OF THE NEW STATIONS

■ The second basis for reversal asserted by the government is that Taft of Pennsylvania was not "operating" a radio station at the time when taxpayer acquired the stock of Taft of Pennsylvania. The government contends that the statutes, §§ 1033 and 1071, only permit the nonrecognition of gain if the taxpayer purchases stock in a corporation which is "operating" a radio station at the time that the stock is purchased. The government argues that the Agreement, which is a part of the record, provides that the radio station licenses and operating authorizations that are necessary to legally operate a radio station were to be delivered to Taft of Pennsylvania "[o]n the Closing Date" of the transaction when the purchase price

was paid.[4] The government contends that the asset delivery could therefore not have occurred under the Agreement until Taft of Pennsylvania had sufficient monies to pay for the assets that it was purchasing and that Taft of Pennsylvania did not have sufficient monies until after the stock purchase by taxpayer because Taft of Pennsylvania did not have any other funds. Thus, the government concludes, Taft of Pennsylvania was not operating the station when taxpayer acquired the stock.

Taxpayer, in response, points out that the stipulations filed by the parties in the lower court included the following fact:

On December 16, 1974, Taft Broadcasting Company of Pennsylvania, Inc. acquired title to the two radio stations described [in Pittsburgh, Pennsylvania].

Taxpayer thus argues that when it acquired the stock of Taft of Pennsylvania on December 17, Taft of Pennsylvania was already operating the stations to which it had acquired title the day before.

The trial court, in granting the taxpayer's Motion for Summary Judgment and denying the government's cross-motion, held that although Taft of Pennsylvania did not "technically" operate the radio stations "until after final closing of the transaction ... the substance of this transaction complies with the statutory requirements of sections 1071 and 1033." On the authority of *John Richard Corp.*, 46 T.C. 41 (1966), the trial court reasoned that the stock purchase by taxpayer and the closing of the acquisition of the two radio stations were "merely steps in an integrated transaction having for its purpose the replacement of petitioner's involuntarily converted property." Concluding that sections 1033 and 1071, as relief provisions, should be liberally construed, the court held that the taxpayer had fulfilled the statutory requirements and was entitled to a summary judgment on the issue of its right to defer income tax consequences under the two statutes.

This court disagrees.

The relevant portions of the two statutes pertaining to this issue, when juxtaposed, provide:

If the taxpayer ... for the purpose of replacing the property so converted, purchases stock in a corporation operating a radio broadcasting station, ... the gain shall be ... [recognized only to a limited extent].

The language of these statutes is clear; the corporation must be "operating" the stations at the time the stock is purchased by taxpayer. Had Congress intended that the tax relief provisions should also be available when the corporation whose stock is purchased does not operate a radio station until after the stock purchase, no doubt it would have said so. "Operating" is written in the present tense not the future, and its extension to include future radio station operations, whether only hours into the future or months later, is not justified given the lack of ambiguity of the statutory language. The single fact that the acquisition of corporate stock and the corporation's later acquisition of an operating radio station are integrated or conceived of as parts of an overall plan with a view to tax deferment or avoidance does not suffice for the courts to rewrite the statutory restrictions which limit the application of the statute.

While it is now established that relief provisions of the Code should be interpreted liberally,[5] such liberality simply affords the fullest meaning to the language chosen by Congress. It does not grant the courts a basis to expand the utilization of the statutory relief provisions beyond the clear but limited meaning of the words of the statute. The future acquisition of operat-

---

4. A copy of the Agreement is attached to the parties' stipulations; its terms provide, among other matters, that:

(1) On the "Closing Date" the assets, including the operating licenses, would be delivered to the buyer;

(2) On the "Closing Date" the buyer would pay the seller $3,500,000.

5. *E.R. Hitchcock Co. v. United States,* 382 F.Supp. 236 (D.Conn.1974), *aff'd,* 514 F.2d 484 (2d Cir.1975); *Frank G. Templeton v. C.I.R.,* 67 T.C. 518 (1976), *aff'd,* 573 F.2d 866 (4th Cir. 1978); *John Richard Corp. v. C.I.R.,* 46 T.C. 41 (1966).

ing radio stations following the taxpayer's purchase of the stock therefore does not entitle taxpayer to the benefit available under §§ 1033 and 1071.

In the alternative, taxpayer also argues that the record establishes that Taft of Pennsylvania was in fact "operating" the new radio stations at the time when taxpayer acquired the stock of Taft of Pennsylvania on December 17, the day after it acquired title to the radio stations and that the trial court's finding that it was not technically operating the stations at that time is erroneous.

Taxpayer supports this position with the "implication" [6] that Taft of Pennsylvania had control of and was operating the radio stations on December 16 and presumably on the following day when taxpayer purchased the stock, which indeed appears to be a logical but disputed inference. The government on the other hand contends that "it is reasonable to infer" [7] that Taft of Pennsylvania did not begin operating the stations until after taxpayer had paid for the stock, providing Taft of Pennsylvania with the funds to complete the stock purchase.

The trial court determined on the cross-motions for summary judgment that Taft of Pennsylvania was not operating the stations when taxpayer purchased the stock. On appeal, this court reviews a summary judgment determination *de novo. Celotex Corp. v. Cantrell,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *American Town Center v. Hall 83 Associates,* 912 F.2d 104 (6th Cir.1990); *Hand v. Central Transport, Inc.,* 779 F.2d 8 (6th Cir.1985).

When a court rules on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor (citation omitted)." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *accord Matsushita Elec. Industry Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *South Ridge Baptist*

*Church v. Industrial Comm'n of Ohio,* 911 F.2d 1203 (6th Cir.1990); *Blakeman v. Mead Containers,* 779 F.2d 1146, 1150 (6th Cir.1985).

Moreover the movant has the burden of showing that there exists no genuine issue of material fact. *Blakeman,* 779 F.2d at 1150.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The facts presented to the district court did not directly address the question of whether Taft of Pennsylvania was operating the radio stations when taxpayer acquired the stock on December 17. The stipulations of the parties establish that Taft of Pennsylvania acquired title to the radio stations the day before the taxpayer purchased the stock; one might infer that the stations were being operated immediately after their title was acquired, as well as the next day, and one might infer that they were being operated by Taft of Pennsylvania, as taxpayer would have the court find. On the other hand the Agreement provides that the necessary legal licenses and other assets of the radio stations were to be delivered to the taxpayer or its assignee at the closing when the purchase price for the assets was to be paid; one might infer that the assets were not physically transferred or delivered until the purchase monies were paid and therefore Taft of Pennsylvania could not have "operated" the stations until it paid for the assets, as the government contends.

Both parties, as movants, rely on inferences favorable to their own positions in seeking to obtain summary judgment, but

---

**6.** Brief of Plaintiff–Appellee, pp. 25–26.

**7.** Reply Brief for the Defendant–Appellant, p. 21.

as noted the law provides that reasonable inferences must be drawn in favor of the nonmovant in the context of a summary judgment.

It is true that both parties seek to resolve this case through the vehicle of cross-motions for summary judgment, but the standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions. *Home for Crippled Children v. Prudential Ins. Co.*, 590 F.Supp. 1490, 1495 (W.D.Pa.1984).

> The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record.

*John v. State of La. (Bd. of Trustees for State Colleges and Universities)*, 757 F.2d 698, 705 (5th Cir.1985); *accord Sherwood v. Washington Post*, 871 F.2d 1144, 1147 n. 4 (D.C.Cir.1989).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts (citations omitted). Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987); *see also, Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948)· (the fact that both parties move for summary judgment does not require the court to find that no issue of fact exists); *Parnell v. Booth Newspapers, Inc.*, 572 F.Supp. 909, 913 (W.D.Mich.1983); *Scarboro v. Travelers Ins. Co.*, 91 F.R.D. 21 (E.D.Tenn.1980).

On the government's motion for summary judgment, the court cannot infer in favor of the government as movant that the station acquisition was closed in accordance with the provisions of the Agreement, that the assets were not delivered to Taft of Pennsylvania until payment was made, that the money to purchase the stations came from the sale of stock to taxpayer and that Taft of Pennsylvania was not "operating" the radio stations at the time that taxpayer purchased the stock because the assets had not yet been delivered to Taft of Pennsylvania. Other than the inferences that the government draws in its own favor, there is no proof in this record that the stations were not being operated by Taft of Pennsylvania at the time that taxpayer acquired the stock. Under that circumstance, the government's motion is not well taken on the present record and must be denied.

Likewise, on the taxpayer's motion, the court cannot infer in favor of the taxpayer that the radio stations were operated by Taft of Pennsylvania immediately after it acquired title to the stations, that they continued to be operated at the time of the stock purchase, and that Taft of Pennsylvania, having acquired title to the radio stations the day before, was the entity operating the stations. Without these inferences, there is no proof that the "operating" requirement of the statute has been met. The lack of such proof precludes summary judgment in favor of the taxpayer. The record presently before the court fails to present sufficient facts upon which it may be held that either party is entitled to a judgment as a matter of law.

Summary judgment in favor of the taxpayer is therefore reversed and this case is remanded to the trial court for further proceedings without prejudice to reconsideration of the motion for summary judgment by the trial court upon further supplementation of the record.