COLLINS v DETROIT FREE PRESS, INC

Docket No. 218313. Submitted January 3, 2001, at Detroit. Decided March 9, 2001, at 9:05 A.M. Leave to appeal sought.

Barbara Rose Collins, former United States Representative for Michigan's 15th Congressional District, brought an action in the Wayne Circuit Court against Detroit Free Press, Inc., States News Service, Ann Hazard-Hargrove, and others, seeking damages for alleged defamation that occurred as a result of the defendants' publication of excerpts from an interview with the plaintiff while she was seeking reelection. The plaintiff was alleged to have stated: "All white people, I don't believe, are intolerant. That's why I say I love the individuals, but I hate the race." The parties agree that the plaintiff actually said: "All white people, I don't believe, are intolerant. That's why I say, I love the individuals, but I don't like the race." The court, Amy P. Hathaway, J., denied the defendants' motion for summary disposition. The defendants appealed by leave granted, alleging, in part, that the quotation that was published was substantially true and does not give rise to liability.

The Court of Appeals *held*:

1. Because the plaintiff is a public figure, the defendants may be found liable only if the plaintiff proves by clear and convincing evidence that the defendants published the defamatory statement with actual malice, i.e., with knowledge that it was false or with reckless disregard of whether it was false. Even a deliberate alteration does not equate with knowledge of falsity for purposes of proving actual malice unless the alteration results in a material change in the meaning conveyed by the statement.

2. Substantial truth is an absolute defense to a defamation claim. A defendant, to avoid liability, need not prove that a publication is literally and absolutely accurate in every minute detail. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

3. The difference between the printed statement and the actual statement in this matter is not material. The gist of the actual statement was the same as the subject misquotation. There was no genuine issue of material fact regarding material falsity or substantial

truth, and the court erred in denying the defendants' motion for summary disposition.

4. Summary disposition was erroneously denied with regard to defendants States News Service and Hazard-Hargrove because the plaintiff failed to show actual malice on their part.

Reversed and remanded.

1. LIBEL AND SLANDER — DEFENSES — SUBSTANTIAL TRUTH.

Substantial truth is an absolute defense to a defamation claim; slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance; even a deliberate misquotation and deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity for purposes of proving actual malice unless the alteration results in a material change in the meaning conveyed by the statement.

2. LIBEL AND SLANDER — DEFENSES — SUBSTANTIAL TRUTH.

A defendant in a defamation action need not prove that a publication was literally and absolutely accurate in every minute detail to avoid liability; a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced; the test examines the sting of the statement to determine its effect on the reader and, if the literal truth would have produced the same effect as the alleged defamatory statement, minor differences in the statements are deemed immaterial.

*Garratt & Bachand, P.C.* (by *C. William Garratt* and *Sarah C. Arnold*), for the plaintiff.

*Honigman Miller Schwartz and Cohn* (by *Herschel P. Fink* and *Cameron J. Evans*), for the defendants.

Before: TALBOT, P.J., and O'CONNELL and COOPER, JJ.

PER CURIAM. Defendants appeal by leave granted the trial court's order denying their motion for summary disposition of plaintiff's defamation action. We reverse and remand for further proceedings.

Plaintiff was the United States Representative for Michigan's 15th Congressional District, located in Detroit. In 1996, plaintiff was seeking reelection to a

fourth term, and she faced opposition in the August primary election. In May 1996, plaintiff was interviewed by defendant Ann Hazard-Hargrove, an employee of defendant States News Service in Washington, D.C.[1] The interview was tape-recorded and transcribed. The Washington defendants provided the tape and the transcript of the interview to defendant Detroit Free Press, Inc. On July 17, 1996, the Detroit Free Press published a story, based on the interview, concerning plaintiff's views on racism. The article attributed the following quotation to plaintiff:

> All white people, I don't believe, are intolerant. That's why I say I love the individuals, but I *hate* the race. . . . [Emphasis added; ellipsis in original.]

On July 30, 1996, plaintiff issued a news release in response to the story. Plaintiff explained that she had "summarized [her] thoughts on racism by stating that [she] loved the individual but that '[she] hated the (sins committed by) the white race against people of color throughout history.'" On July 31, 1996, a story circulated on the Associated Press wire service repeating the original quotation and indicating that defendants had verified the quotation and found it to be accurate.

On August 9, 1996, after plaintiff had lost the primary election for her congressional seat, the Detroit Free Press published a retraction. The Free Press admitted that plaintiff had been quoted "incorrectly," said that it "clearly made a mistake," and indicated that the Free Press would consider disciplinary action

---

[1] Defendants Hazard-Hargrove and States News Service will be referred to as the "Washington defendants."

against the reporter and editors involved. After the tape and transcript of the interview had been reviewed, the Free Press admitted that plaintiff had actually said:

> All white people, I don't believe, are intolerant. That's why I say, I love the individuals, but I *don't like* the race. [Emphasis added.]

Plaintiff filed the instant action asserting claims of defamation, intentional infliction of emotional distress, intentional publication of injurious falsehoods, false light invasion of privacy, violation of the consumer protection act, and conspiracy. Defendants moved for summary disposition, arguing that the "gist" or "sting" of the original article was substantially true. The trial court rejected this argument and determined that "hate" and "dislike" had substantially different meanings, especially in this context. The court was satisfied that "the word 'hate' can have a major effect on the minds of the readers, particularly in the minds of the readers in a jurisdiction such as Detroit." The trial court further stated that plaintiff had presented evidence of fault amounting to negligence on the part of the Washington defendants. The court denied defendants' motion for summary disposition.

On appeal, defendants argue that summary disposition was warranted because, although plaintiff was misquoted, the quoted material was substantially true and, therefore, may not give rise to liability. Further, the Washington defendants argue that they are entitled to summary disposition because there was no evidence of fault on their part.

We review a trial court's grant or denial of a motion for summary disposition de novo. *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000). Although plaintiff argued below that the trial court should not decide the matter under MCR 2.116(C)(10), defendants submitted documentary evidence in support of their motion for summary disposition, and plaintiff similarly offered documentary evidence in support of her response to defendants' motion. The record indicates that the trial court considered that evidence in deciding the motion. Because the court looked beyond the pleadings in deciding the motion, we will review the motion as having been denied pursuant to MCR 2.116(C)(10). See *Kefgen, supra* at 616; *Blair v Checker Cab Co*, 219 Mich App 667, 670-671; 558 NW2d 439 (1996). In reviewing a motion under MCR 2.116(C)(10), the court must examine the documentary evidence presented by the parties and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 361-362; 547 NW2d 314 (1996).

> "When addressing defamation claims implicating First Amendment freedoms, appellate courts must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression and to examine the statements and circumstances under which they were made to determine whether the statements are subject to First Amendment protection." [*Ireland v Edwards*, 230 Mich App 607, 613; 584 NW2d 632 (1998), quoting *Northland Wheels Roller Skating Center, Inc v Detroit Free Press, Inc*, 213 Mich App 317, 322; 539 NW2d 774 (1995).]

See also *New York Times Co v Sullivan*, 376 US 254,
285; 84 S Ct 710; 11 L Ed 2d 686 (1964); *Locricchio v
Evening News Ass'n*, 438 Mich 84, 110; 476 NW2d 112
(1991). The elements of libel are

> 1) a false and defamatory statement concerning the plain-
> tiff, 2) an unprivileged communication to a third party, 3)
> fault amounting to at least negligence on the part of the
> publisher, and 4) either actionability of the statement irre-
> spective of special harm or the existence of special harm
> caused by publication. [*Rouch v Enquirer & News of Battle
> Creek (After Remand)*, 440 Mich 238, 251; 487 NW2d 205
> (1992).]

Additionally, the First Amendment requires courts to
determine whether the plaintiff is a public or private
figure, whether the defendant is part of the media,
and whether the allegedly defamatory statement
involved a matter of public interest. *Id.* at 251-252.

In the present case, it is undisputed that plaintiff
was a public figure, that defendants are part of the
media, and that the subject of the article, plaintiff's
views on racism, involved a matter of public concern.
On the basis of plaintiff's status as a public figure,
defendants may be liable only if plaintiff is able to
prove by clear and convincing evidence that they pub-
lished the defamatory statement with actual malice,
i.e., with "knowledge that it was false or with reckless
disregard of whether or not it was false." MCL
600.2911(6); *Faxon v Michigan Republican State
Central Committee*, 244 Mich App 468; 624 NW2d 509
(2001).[2] See also *Masson v New Yorker Magazine*,

---

[2] As this Court recently observed in *Faxon, supra*, when a plaintiff is a
public figure or public official, the actual malice standard applies irrespec-
tive of the media or nonmedia status of the defendant. *Faxon, supra* at
476-477, quoting MCL 600.2911(6).

*Inc*, 501 US 496, 510; 111 S Ct 2419; 115 L Ed 2d 447 (1991), quoting *New York Times, supra* at 279-280; *Rouch, supra* at 255; *Locricchio, supra* at 113. Further, in the context of a misquotation, the United States Supreme Court has held that even "a deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity for purposes of" proving actual malice "unless the alteration results in a *material change* in the *meaning* conveyed by the statement." *Masson, supra* at 517 (emphasis added).

To avoid liability, it is not necessary for "defendants to prove that a publication is literally and absolutely accurate in every minute detail." *Rouch, supra* at 258. Rather, substantial truth is an absolute defense to a defamation claim. See *Masson, supra* at 516-517; *Rouch, supra* at 258-259. Michigan courts have held that " '[s]light inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.' " *Id.* at 258-259, quoting 3 Restatement Torts, 2d, § 581A, comment f, p 237. " 'It is sufficient for the defendant to justify so much of the defamatory matter as constitutes the sting of the charge, and it is unnecessary to repeat and justify every word . . . so long as the substance of the libelous charge be justified,' " and " 'the inaccuracy in no way alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce . . . .' " *Rouch, supra* at 259, quoting *McAllister v Detroit Free Press Co*, 85 Mich 453, 460-461; 48 NW 612 (1891). "Thus, the test look[s] to the sting of the article to determine its effect on the reader; if the literal truth [would have] produced the same effect, minor differences [a]re deemed immaterial." *Rouch, supra* at 259; see also

*Koniak v Heritage Newspapers, Inc (On Remand),*
198 Mich App 577, 580; 499 NW2d 346 (1993).

"The substantial truth doctrine is frequently
invoked to solve two recurring problems: minor inac-
curacies and technically incorrect or flawed use of
legal terminology"—both of which were issues in
*Rouch* and *Koniak. Rouch, supra* at 260. However,
the doctrine has not been limited to such situations.
See *id.* at 258-271. Indeed, such a limitation would
make little sense, given that, in addition to being a
defense, the substantial truth doctrine provides the
common law "definition of falsity" that a plaintiff
must meet in order to prevail on a defamation claim.
See *id.* at 259-260. In other words, for purposes of
establishing a prima facie case of defamation, a
"statement is not considered false unless it 'would
have a different effect on the mind of the reader from
that which the pleaded truth would have produced.' "
*Masson, supra* at 517 (citation omitted). The substan-
tial truth doctrine was applied by the United States
Supreme Court in *Masson,* a case involving substan-
tial misquotation. See *id.* at 522-525.

Where the allegedly defamatory statement is a pur-
ported quotation, the question is whether, viewing the
evidence in the light most favorable to the plaintiff,
"the published passages differ materially in meaning
from the [plaintiff's] statements so as to create an
issue of fact for a jury as to falsity." *Id.* at 521. In
*Masson,* the Supreme Court applied the substantial
truth/material falsity analysis by comparing the indi-
vidual printed quotations at issue to the plaintiff's
actual tape-recorded statements. See *id.* at 522-525.
Viewing each quotation independently, the Court
decided whether, "as a matter of law," the defendant

"materially altered" the meaning of the plaintiff's actual statements. See *id.* at 522-525.

In this case, the original article quoted plaintiff as having said, "I hate the race." In fact, plaintiff had said, "I don't like the race." According to plaintiff's news release, the comments were made in the context of discussing how racism had personally affected her. The printed quotation, although admittedly inaccurate, does not paint a "very different picture" from the actual quotation. See *id.* at 523-524. Plaintiff does not contest portions of the article in which she was quoted as saying that "God is going to have to burn [racism] out of white people" or that "the only reason Dr. Martin Luther King was successful was because he said if blood had to flow, let it be my black blood, and not the blood of my white brother, and white people like to hear that kind of stuff." Plaintiff was also quoted as saying that white people "don't even realize how they benefit from racism." Also, immediately following the subject misquotation, the article contains the following quotation which provides some context to plaintiff's statement: "I've got a lot of friends who are white. At one time, all my friends were white, so it's like I don't like the race, I like the individuals." Further, a review of the interview as a whole reveals that plaintiff used the terms "love" and "like," and "hate" and "don't like" loosely and interchangeably during the uncontested printed portions of the interview.

When the article is viewed in its entirety, the difference between the two quotations is not material. The gist of the actual statement was the same as the subject misquotation. Because we find no material difference between the printed statement and plaintiff's

actual words, we conclude that there is no genuine issue of material fact regarding material falsity or substantial truth. Accordingly, the trial court erred in denying defendants' motion for summary disposition.

With regard to the Washington defendants, the trial court declined to grant summary disposition because it concluded that the statements quoted on the wire service story showed "[n]egligence" on the part of those defendants. However, because this case involves a public figure, plaintiff was required to show actual malice, not merely negligence. MCL 600.2911(6); *Faxon, supra* at 474. See also *Masson, supra* at 510.

Plaintiff also argues that the statements quoted in the wire service story implied that she was lying, and that the wire service story was therefore libelous by implication. We note that plaintiff did not allege a claim of defamation by implication in her complaint. The complaint merely alleges that the second article constituted a republication of the original defamation. Therefore, we need not decide the issue whether there was a question of material fact concerning defamation by implication.[3]

Lastly, this Court has held that the First Amendment limitations that apply to defamation claims "are not exclusive to defamation claims." *Ireland, supra* at

---

[3] Although plaintiff's complaint hints at a claim of defamation by implication, plaintiff did not plead facts to support this allegation and did not set forth a separate claim of defamation by implication. In her complaint, plaintiff merely characterized the second story as a republication of the original statement. Further, contrary to plaintiff's argument, the substantial truth doctrine applies to claims of defamation by implication. See *Hawkins v Mercy Health Services, Inc*, 230 Mich App 315, 333-336; 583 NW2d 725 (1998); *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 701-705; 609 NW2d 607 (2000).

624. Rather, they apply to all of plaintiff's claims in this case. *Id.* Thus, defendants are entitled to summary disposition with respect to all of plaintiff's claims.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.