RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES D. NICHOLS,

      *Plaintiff-Appellant,*

      *v.*

      No. 05-2075

MICHAEL MOORE,

      *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-74313—Paul D. Borman, District Judge.

Argued: November 28, 2006

Decided and Filed: February 20, 2007

Before: MARTIN and GUY, Circuit Judges; ROSE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stefani C. Godsey, Williamston, Michigan, for Appellant. Herschel P. Fink, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellee. **ON BRIEF:** Stefani C. Godsey, Kenneth G. McIntyre, Williamston, Michigan, for Appellant. Herschel P. Fink, Brian D. Wassom, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

      RALPH B. GUY, JR., Circuit Judge. Plaintiff James Nichols appeals the district court's entry of summary judgment in favor of defendant Michael Moore. On appeal, Nichols makes numerous arguments, including that the district court (1) wrongfully made factual determinations in concluding that Moore's allegedly defamatory statements were substantially true, and (2) erroneously determined that Nichols was a public figure and erroneously applied the "actual malice" standard. For the following reasons, we affirm.

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

## I.

In 2002, documentary film producer Michael Moore released the movie *Bowling for Columbine*, which explored the topic of gun violence in America. As part of the movie, Moore interviewed James Nichols, the brother of convicted Oklahoma City bomber Terry Nichols and acquaintance of convicted Oklahoma City bomber Timothy McVeigh.[1] Moore edited the three-hour interview with James Nichols and included ten minutes of this interview in the movie. Related to this interview, Moore also included a brief narration[2] regarding the Oklahoma City bombing. James Nichols asserts that this narration was defamatory. The narration stated:

(1)    . . . when on April 19, 1995 two guys living in Michigan who had attended Militia meetings, Timothy McVeigh and Terry Nichols, blew up the federal building in Oklahoma City killing 168 people.

(2)    On this farm in Decker, Michigan, McVeigh and the Nichols brothers made practice bombs before Oklahoma City.

(3)    Terry and James were both arrested in connection to the bombing.

(4)    (female voice over) U.S. Attorneys formally linked the Nichols brothers of Michigan with Oklahoma bomb suspect, Timothy McVeigh.

(5)    Officials charged James, who was at the hearing, and Terry, who was not, with conspiring to make and possess small bombs.

(6)    Terry Nichols was convicted and received a life sentence. Timothy McVeigh was executed. But the feds didn't have the goods on James, so the charges were dropped.

Nichols asserts that the narration defamed him because it falsely stated that he made practice bombs before Oklahoma City and because the narration falsely implied that he was arrested and charged in connection to the Oklahoma City bombing. In contrast to Moore's narration, Nichols asserts that he did not make practice bombs and that he was never arrested or charged with a criminal offense in connection to the Oklahoma City bombing. Instead, Nichols asserts that, shortly after the Oklahoma City bombing, he was charged with an explosives offense which was not related to the Oklahoma City bombing and which was ultimately dismissed.

In October 2003, Nichols filed the present action in the Eastern District of Michigan against defendant Michael Moore. Nichols's lawsuit, which is based on diversity of citizenship, asserts a count of libel *per se* against Moore as well as various other related counts. On July 13, 2005, the district court granted summary judgment for defendant Michael Moore and entered a final judgment in Moore's favor. Nichols now appeals the district court's summary judgment ruling to this court.

---

[1]Terry Nichols is serving a sentence of life in prison for his role in the bombing. In 2001, Timothy McVeigh was executed for his role in the bombing.

[2]The narration was read by Moore as related video images, including images from the Oklahoma City bombing, were played on the screen.

## II.

### A.        Standard of Review

We review a district court's grant of summary judgment as well as its findings regarding matters of law under the *de novo* standard. *McKee v. Cutter Labs., Inc.*, 866 F.2d 219, 220 (6th Cir. 1989). Summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). On summary judgment, the district court is required to draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.        Michigan Defamation Law

Under Michigan law, in order to show libel, a plaintiff must show four elements:

> 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

*Rouch v. Enquirer & News*, 440 Mich. 238, 251 (1992).

In addition to satisfying these requirements, a plaintiff must also satisfy the constitutional requirements of the First Amendment. Pursuant to *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 330-332 (1974), if the plaintiff is a public figure, he must show by clear and convincing evidence that the defamatory statements were made with "actual malice," that is, that it was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280. *See Collins v. Detroit Free Press, Inc.*, 627 N.W.2d 5 (Mich. App. 2001) (requiring clear and convincing evidence); *see also* M.C.L. § 600.2911.

In support of his summary judgment motion, defendant Michael Moore offered the district court two principal defenses to plaintiff's allegations: (1) that the statements regarding James Nichols in *Bowling for Columbine* were substantially true; and (2) that Nichols is a limited public figure and that he cannot satisfy the *New York Times v. Sullivan* standard of "actual malice." In granting defendant's motion for summary judgment, the district court agreed with defendant's arguments and concluded both that the alleged defamatory statements were substantially true and that Nichols was a limited public figure and could not satisfy the "actual malice" standard. For the following reasons, we agree with the district court's conclusions and affirm.

### C.        Moore's Statements Regarding James Nichols were Substantially True

Under Michigan law, the court decides as a matter of law whether a particular statement is defamatory. *Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767 (Mich. App. 1987). "If the gist, the sting, of the article is substantially true, the defendant is not liable." *Id.* at 767-68. In resolving defendant's motion for summary judgment, the district court analyzed each of the alleged defamatory statements and concluded that each was substantially true. We agree.

#### 1.        "McVeigh and the Nichols brothers made practice bombs before Oklahoma City."

Plaintiff James Nichols first argues that the district court did not draw all reasonable inferences in his favor in concluding that the "made practice bombs" statement was substantially true. Nichols asserts that the district court failed to accept as true his under-oath statements asserting

that he had never experimented with explosive devices and that the only explosive device he ever made was a small pill-vial bomb made out of black powder to loosen soybeans lodged in his grain bin. Plaintiff misconstrues the appropriate legal standard.

In libel cases such as the present one, it is the plaintiff's burden to prove falsity. *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 394 (Mich. App. 1992) ("In a case involving a private plaintiff, a media defendant, and a publication regarding an area of public concern, the constitution requires that the plaintiff bear the burden of proving falsity."). Additionally, "[l]iability may not be imposed on a media defendant for facts about public affairs it publishes accurately and without material omissions." *Id*. Finally, M.C.L. § 600.2911(3) states:

> Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report.

In its opinion, the district court reasoned that there was sufficient evidence in the public record to justify Moore's "made practice bombs" statement. The district court relied on an affidavit in support of the criminal complaint against Nichols which was provided by FBI Agent Patrick W. Wease. Wease stated:

> On April 21, 1995, JAMES DOUGLAS NICHOLS was interviewed in Decker, Michigan. During this interview, JAMES NICHOLS stated that he is the brother of TERRY NICHOLS and is a friend of TIMOTHY MCVEIGH, and that both have visited and/or resided with him at his farm in Decker, Michigan, over the past several years. JAMES NICHOLS further stated that he has observed MCVEIGH and TERRY NICHOLS making and exploding 'bottle bombs' at his residence in 1992, using brake fluid, gasoline, and diesel fuel. JAMES NICHOLS further stated that he participated with MCVEIGH and TERRY NICHOLS in making 'bottle bombs' in 1992, and that in 1994, he JAMES NICHOLS, has made small explosive devices using prescription vials, pyrodex, blasting caps, and safety fuse.

The district court next noted that the amended criminal complaint also referenced several sources which described plaintiff making bombs. Additionally, the district court referred to an order of detention pending trial that was entered by the magistrate against plaintiff, which found that there was clear and convincing evidence that plaintiff had experimented with explosive materials. We agree with the district court's finding that there was sufficient evidence in the public record to support Moore's "made practice bombs" statement. Accordingly, based on this public record evidence, it was not error for the district court to conclude that Nichols's under-oath denials did not create a genuine issue of material fact.

Nichols also argues that the second half of the "made practice bombs" statement is defamatory because there was no evidence that any practice bombs were made in preparation for Oklahoma City. Moore's statement merely stated, however, that "McVeigh and the Nichols brothers made practice bombs *before* Oklahoma City." (Emphasis added.) There is no dispute that any practice bombs made on Nichols's property were made "before Oklahoma City." Accordingly, we agree with the district court's finding that the entire "made practice bombs before Oklahoma City" statement is substantially true.

### 2.        "Terry and James were both arrested in connection to the bombing."

Nichols argues that the "arrested in connection to the bombing" statement offers the clearest indication of the district court's failure to abide by the summary judgment standard. Additionally,

the district court viewed this statement by Moore as the "most troublesome." The district court viewed the "arrested in connection to the bombing" statement as troubling because Nichols is correct in asserting that he was never arrested or charged for having committed any criminal act directly related to the Oklahoma City bombing. Nichols is also correct in asserting that Michael Moore knew this fact to be true when he published *Bowling for Columbine*. Despite the troubling nature of Moore's statement, we nevertheless agree with the district court's finding that Moore's "arrested in connection to the bombing" statement is substantially true.

Though Nichols was neither charged nor arrested regarding the Oklahoma City bombing, we believe that Nichols's arrest was sufficiently in connection to the bombing for Moore's statement to be considered "substantially true." Nichols was arrested only days after the bombing and his arrest was brought about by the FBI's investigation into Timothy McVeigh's and Terry Nichols's roles in the bombing. Additionally, Nichols was held as a material witness in connection to the Oklahoma City bombing, and Nichols himself admitted that he did not know whether this constituted an arrest in connection to the bombing. Based on these facts, we agree with the district court's determination that the "arrested in connection to the bombing" statement is substantially true.

### 3. "Officials charged James, who was at the hearing, and Terry, who was not, with conspiring to make and possess small bombs."

Nichols next argues that the district court erred in finding that the "[o]fficials charged James . . . with conspiring to make and possess small bombs" statement was substantially true. We agree with the district court's finding. In the 1995 criminal prosecution of plaintiff, the federal grand jury indictment charged plaintiff with "Conspiracy to Possess Unregistered Firearms." The indictment alleged that "the co-conspirators would manufacture destructive devices on Nichols' farm in Decker, Michigan." The "overt acts" section asserted:

> In approximately 1992, James Nichols, Terry Nichols and Timothy McVeigh experimented in the manufacture and detonation of destructive devices made up of readily available materials such as brake fluid and diesel fluid.

Based on the allegations of the indictment against James Nichols, we find that Moore's statement that "[o]fficials charged James, who was at the hearing, and Terry, who was not, with conspiring to make and possess small bombs" is substantially true.

### 4. "But the feds didn't have the goods on James, so the charges were dropped."

Nichols challenges the district court's finding that Moore's statement "[b]ut the feds didn't have the goods on James, so the charges were dropped" was substantially true. We agree with the district court's finding that this statement is "literally and substantially true." It is undisputed that the charges against James Nichols *were* dropped due to a lack of evidence against him. Accordingly, the district court correctly concluded that Moore's "the charges were dropped" statement is substantially true.

### D.     Whether James Nichols is a Limited Public Figure

As an alternative basis for its grant of summary judgment to defendant, the district court determined that plaintiff James Nichols was a limited public figure and that he could not satisfy the actual malice standard. As we have already concluded that defendant's statements were substantially true, it is not necessary to provide a detailed analysis of this issue. Instead, we affirm the district judge on this issue and incorporate his sound analysis.

### E. Defamation by Implication

Lastly, we consider whether the district court correctly rejected plaintiff's defamation by implication claim. By this claim, Nichols argues that even if Moore's statements were literally true when read in isolation, when viewed in their entirety and in proper context, they defamed plaintiff by implying that he was involved in the Oklahoma City bombing. Under Michigan law, "claims of defamation by implication, which by nature present ambiguous evidence with respect to falsity, face a severe constitutional hurdle." *Locricchio v. Evening News Ass'n*, 438 Mich. 84, 122 (1991). Michigan caselaw also states:

> Principles of general libel and First Amendment libel law continue to apply [regarding defamation by implication]. Michigan prohibits libel liability for true speech on matters of public concern. Liability may not be imposed on a media defendant for facts about public affairs it publishes accurately and without material omissions.

*Royal Palace Homes*, 495 N.W.2d at 394 (citations omitted). Furthermore, in *Locricchio*, Chief Justice Cavanaugh elaborated on defamation by implication in his concurring opinion:

> [I]t is enough to conclude, as a matter of law, that a defamation defendant cannot be held liable for the reader's possible inferences, speculations, or conclusions, where the defendant has not made or directly implied any provably false factual assertion, and has not, by selective omission of crucial relevant facts, misleadingly conveyed any false factual implication.

*Locricchio*, 438 Mich. at 144.

In the present case, and as discussed in the previous sections, each sentence of Moore's narration regarding James Nichols in *Bowling for Columbine* is substantially true. Though it is possible that a viewer of the movie could erroneously conclude that James Nichols made practice bombs in preparation for Oklahoma City, and was arrested and charged in the Oklahoma City bombing, the court finds that plaintiff's evidence cannot meet the high hurdle presented by a defamation by implication claim. Plaintiff has not presented any evidence indicating that Michael Moore intended to falsely implicate James Nichols in the Oklahoma City bombing. *See Royal Palace Homes*, 495 N.W.2d at 396 ("[The defendant] is not responsible for every defamatory implication a reader might draw from his report of true facts, absent evidence that he intended the defamatory implication."). Additionally, plaintiff has failed to prove that Moore's narration included either false statements or the omission of material facts. Instead, Moore's narration clearly indicated that James Nichols was charged with making and possessing small bombs and that the charges against Nichols were dropped due to a lack of evidence. For these reasons, plaintiff's claim for defamation by implication must fail and the district court properly granted summary judgment in favor of defendant as to this claim.

**AFFIRMED.**