# STATE OF MICHIGAN

# COURT OF APPEALS

TODD L. LEVITT,

        Plaintiff/Respondent-Appellee,

v

DIGITAL FIRST MEDIA, THE MORNING SUN,
and LISA YANICK-JONAITIS,

        Defendants/Petitioners-Appellants.

UNPUBLISHED
May 16, 2017

No. 330946
Isabella Circuit Court
LC No. 15-012317-NZ

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and GADOLA, JJ.

PER CURIAM.

This defamation case stems from defendants' news coverage of a separate lawsuit. Plaintiff is an attorney and was an adjunct professor at Central Michigan University (CMU). In 2014, plaintiff sued CMU student Zachary Felton after Felton created the Twitter account "Todd Levitt 2.0," used plaintiff's picture and logo for the account, and posted numerous tweets over a two-week period. Plaintiff asserted claims of false light, intentional infliction of emotional distress, libel, tortious interference with business relations, defamation per se, business defamation, and unfair competition. The trial court granted summary disposition in favor of Felton and dismissed the case after concluding that the Twitter account was an obvious parody and therefore protected by the First Amendment. Plaintiff appealed that ruling, and this Court upheld the trial court's decision on appeal. *Levitt v Felton*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2016 (Docket No. 326362) (*Levitt I*).

In August 2014, The Morning Sun, a subsidiary of Digital First Media, published an article discussing *Levitt I* with the headline, "[L]awyer suing student admits to fake award[.]" The article, which was written by Lisa Yanick-Jonaitis, contained information about the case, specifically Felton's affirmative defenses and allegations, and plaintiff's answers to interrogatories. The article stated that plaintiff created the website "topcollegelawyers.com," and that the website announced plaintiff as the winner of a College Lawyer of the Year award.

Plaintiff sued defendants, raising claims of libel and slander, false light, civil conspiracy, and intentional infliction of emotional distress. Plaintiff's complaint states the following regarding the statements in the article:

13. On or about Sunday, August 10, 2014, The Morning Sun published a front page, above-the-fold headline, "Attorney suing student admits to fake award", for a following story written by Yanick-Jonaitis.

14. Yanick-Jonaitis wrote in that article, among other things:

a. "a Mt. Pleasant lawyer and former Central Michigan University instructor, who is suing a student for defamation, admitted in court documents filed Friday that he created a 'top college lawyer' recognition and awarded it to himself"; and

b. "one of those claims, supported by HTML coding information entered as an exhibit in the case, is that Levitt himself created the website topcollegelawyers.com, and then proclaimed himself 'College Lawyer of the Year', and used the manufactured award to promote himself"; and

c. "the website in part said that Levitt was, 'Chosen by an independent search committee measuring social media influence together with campus involvement to assist students academically in persuing [sic] their futures"[.]

Defendants moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that plaintiff failed to allege facts to establish actual malice. Defendants further contended that, as a member of the news media, they were entitled to the fair-reporting privilege of MCL 600.2911(3) because the article was a fair and true representation of the developments in *Levitt I*. They also maintained that they were entitled to summary disposition because the challenged statements were not materially false.

Plaintiff argued in response that the article did not merely report on the pleadings in *Levitt I*. Although plaintiff admitted that he created the website "topcollegelawyers.com," that the website announced plaintiff as the "winner" of the College Lawyer of the Year award, and that the website said plaintiff was chosen as the award recipient "by an independent search committee," he emphasized that the headline stating that he *admitted* to a *fake* award was false. Plaintiff submitted the affidavit of Ryan Battishall, who explained that plaintiff hired him to develop and launch the website and instructed that an annual award would be a component of the website. Plaintiff also submitted the affidavits of attorneys Joshua Jones and Robert Piaziali, who explained that, at plaintiff's request, they served as members of the independent committee referenced by the website. They said they chose plaintiff as the first recipient of the award on the basis of the website's criteria.

The trial court issued an opinion and order denying defendants' motion for summary disposition. The court recognized that a showing of actual malice is only required in a defamation action by a plaintiff who is a public figure, and concluded that plaintiff was a private figure under the facts presented. The court further concluded that the fair-reporting privilege in MCL 600.2911(3) did not apply because, although Felton in *Levitt I* alleged that plaintiff created a fake award, plaintiff did not admit to creating a fake award and in fact provided evidence to the contrary. The court determined that defendants failed to show that the article was not materially false because the "gist" of the article was that "plaintiff admitted to creating a fake award, which

he then awarded to himself," which the court concluded produced a different effect on the reader than the literal truth. Lastly, the trial court denied summary disposition on plaintiff's claims of intentional infliction of emotional distress, false light, and civil conspiracy.

Defendants filed an application for leave to appeal in this Court, arguing that plaintiff failed to sufficiently plead fault regarding his defamation claim; that defendants were entitled to the fair-reporting privilege; that the statements identified by plaintiff from the article were substantially true; and that the trial court erred by failing to dismiss plaintiff's other claims in light of his insufficient defamation claim. On March 3, 2016, this Court granted the application for leave to appeal, "limited to the issues raised in the application." *Levitt v Digital First Media*, unpublished order of the Court of Appeals, entered March 3, 2016 (Docket No. 330946).

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of a motion for summary disposition. *Thomas v Bd of Law Examiners*, 210 Mich App 279, 280; 533 NW2d 3 (1995). We also review de novo "whether a person is a public figure for purposes of a defamation action." *Bufalino v Detroit Magazine, Inc*, 433 Mich 766, 774; 449 NW2d 410 (1989). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim; summary disposition on this basis is warranted if the complaint fails to state a claim on which relief can be granted. *Haynes v Neshewat*, 477 Mich 29, 34; 729 NW2d 488 (2007). "The motion should be granted only if no factual development could possibly justify recovery." *Id.*

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of a claim. *Spiek v Mich Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). When reviewing a motion under MCR 2.116(C)(10), courts consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in a light most favorable to the party opposing the motion. *Id.* Summary disposition under MCR 2.116(C)(10) is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

## III. DISCUSSION

To establish a claim of defamation, a plaintiff must prove the following four elements: (1) "a false and defamatory statement concerning the plaintiff," (2) "an unprivileged communication to a third party," (3) "fault amounting to at least negligence on the part of the publisher," and (4) "either actionability of the statement irrespective of special harm or the existence of a special harm caused by publication." *Rouch v Enquirer & News of Battle Creek Mich (After Remand)*, 440 Mich 238, 251; 487 NW2d 205 (1992) (*Rouch II*). The First Amendment further requires courts "to determine whether the plaintiff is a public or private figure, whether the defendant is part of the media, and whether the allegedly defamatory statement involved a matter of public interest." *Collins v Detroit Free Press, Inc*, 245 Mich App 27, 32; 627 NW2d 5 (2001). If a plaintiff is a public figure, he or she must prove by clear and convincing evidence that the challenged statements were made with actual malice. *Garvelink v Detroit News*, 206 Mich App 604, 608; 522 NW2d 883 (1994); MCL 600.2911(6). There are two types of public figures: a general-purpose public figure and a limited-purpose public figure. *Bufalino*, 433 Mich at 779-780.

A limited-purpose public figure is a person who "voluntarily injects himself or is drawn into a particular controversy and assumes special prominence in the resolution of that public controversy." *New Franklin Enterprises v Sabo*, 192 Mich App 219, 222; 480 NW2d 326 (1991). By contrast, a general-purpose public figure is someone who has "general fame or notoriety in the community, and pervasive involvement in the affairs of society." *Bufalino*, 433 Mich at 780 (quotation marks and citation omitted). "Courts have tended to limit the designation to those persons whose names have become household words." *Id.* at 788-789. "[P]ublic attention and media interest do not, in and of themselves, necessarily justify a finding that a person is a 'public figure.' " *Id.* at 787.

We agree with the trial court that plaintiff was not a public figure. Defendants do not argue that plaintiff was involved in any public controversy, such that he could be considered a limited-purpose public figure. And although there is some evidence that plaintiff is well-known on CMU's campus, receives publicity through the student newspaper, posts YouTube videos, hosts a radio show, and filmed a pilot for a reality TV show, these activities do not demonstrate that plaintiff has "general fame or notoriety in the community," *Bufalino*, 433 Mich at 780, such that he could be considered a general-purpose public figure. Rather, plaintiff is a private figure.

This case also involves media defendants and a matter of public interest.[1] Reports regarding court cases are matters of public concern. See *Rouch II*, 440 Mich at 274-275 (RILEY, J., concurring). And reports on flawed public services, such as the article's discussion of *Levitt I*, which addressed plaintiff's allegedly improper marketing of legal services to the public, can constitute matters of public interest.[2] "[S]peech on matters of public concern merits heightened protection under the First Amendment." *Locricchio v Evening News Ass'n*, 438 Mich 84, 119; 476 NW2d 112 (1991). A private plaintiff suing a media defendant for defamation regarding a matter of public interest must first prove the falsity of a challenged statement. *Id.* at 122.

"[T]he substantial truth doctrine provides the common law definition of falsity that a plaintiff must meet in order to prevail on a defamation claim." *Collins*, 245 Mich App at 34 (quotation marks and citation omitted). Substantial truth is an absolute defense to a defamation claim. *Id.* at 33. The test looks at the sting of an article to determine its effect on the reader; "a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 34 (quotation marks and citations omitted). Articles with "minor inaccuracies" that do "not alter the complexion of the affair and would have no different effect on the reader than that which the literal truth would

---

[1] Defendants argue that the article at issue involved a matter of public interest and plaintiff does not dispute this claim on appeal.

[2] See, e.g., *America Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 696-699, 702; 609 NW2d 607 (2000) (discussing the validity and quality of a company's transmission repairs); *Hawkins v Mercy Health Servs, Inc*, 230 Mich App 315, 326; 583 NW2d 725 (1998) (discussing "the death of a patient at the hospital following the inappropriate administration of medication"); *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc*, 197 Mich App 48, 49-51; 495 NW2d 392 (1992) (discussing flawed homes built by a particular building contractor).

-4-

produce" are substantially true. *Rouch II*, 440 Mich at 270 (quotation marks and citation omitted). If published information is substantially true, a trial court should grant summary disposition under MCR 2.116(C)(10) regarding any related defamation claim. *Koniak v Heritage Newspapers, Inc (On Remand)*, 198 Mich App 577, 581; 499 NW2d 346 (1993) (*Koniak III*).

In this case, although it is technically true that plaintiff did not "admit" that the College Lawyer of the Year award was "fake" or admit in a court document that he "awarded" the " 'top college lawyer' recognition . . . to himself," we conclude that these inaccuracies do not alter the complexion of the affair and would have no different effect on the mind of the reader than would the literal truth. See *Rouch II*, 440 Mich at 270. The facts of this case demonstrate that plaintiff admitted that he commissioned the topcollegelawyers.com website and created the College Lawyer of the Year award to generate profits. He further conceded that he established the criteria for the award, chose the persons who comprised the committee that selected the award recipient, won the award, and then broadcast this as an accomplishment on a marketing website. Although the article contained slight inaccuracies, we conclude that the sting of the article's headline would not have a different effect on a reader than the literal truth. Therefore, the trial court should have granted defendants' motion for summary disposition regarding plaintiff's defamation claim.[3] *Koniak III*, 198 Mich App at 581.

Regarding plaintiff's false light, intentional infliction of emotional distress, and civil conspiracy claims, the United States Supreme Court "has directed that a statement must be 'provable as false' to be actionable." *Ireland v Edwards*, 230 Mich App 607, 616; 584 NW2d 632 (1998), quoting *Milkovich v Lorain Journal Co*, 497 US 1, 19; 110 S Ct 2695; 111 L Ed 2d 1 (1990). This limitation on actionability is a First Amendment limitation. *Ireland*, 230 Mich App at 624. When the actionability of a statement is barred by the First Amendment, summary disposition is appropriate with regard to all of a plaintiff's claims that are based on the statement. *Id.* at 624-625. The challenged statements in this case were not provable as false. Thus, because plaintiff cannot overcome the First Amendment limitations regarding the statements, the trial court should have granted summary disposition regarding all of plaintiff's claims. See *id.*[4]

Finally, although a party facing a motion for summary disposition under MCR 2.116(C)(8) and 2.116(C)(10) should generally be given an opportunity to amend his or her pleadings as provided by MCR 2.118, see MCR 2.116(I)(5), we conclude that any such

---

[3] In light of our conclusion that the challenged statements in the article are substantially true, we need not address defendants' alternative arguments that they are entitled to summary disposition on plaintiff's defamation claim on the basis of the fair-reporting privilege of MCL 600.2911(3) or because plaintiff failed to sufficiently plead fault in his complaint.

[4] See also *Collins*, 245 Mich App at 30, 36-37 (holding that defendants were entitled to summary disposition on a plaintiff's claims of intentional infliction of emotional distress, false light invasion of privacy, and conspiracy because the First Amendment limitations applicable to defamation claims are not exclusive to defamation claims).

opportunity to amend would not be justified in this case because our conclusion that the statements in the article were substantially true renders any possible amendment futile.

Reversed and remanded for further proceedings consistent with this opinion.


/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Michael F. Gadola