*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEATHER JONES,

      Plaintiff-Appellant,

v

DETROIT NEWS,

      Defendant-Appellee.

UNPUBLISHED
August 11, 2022

No.  358661
Wayne Circuit Court
LC No.  21-007096-CZ

Before:  RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

In this defamation and invasion of privacy action, plaintiff appeals as of right the trial court's order granting summary disposition to defendant pursuant to MCR 2.116(C)(8).  On appeal, plaintiff argues that the trial court erred in dismissing her complaint because she sufficiently pleaded viable claims for both defamation and false light invasion of privacy.  We disagree with plaintiff and affirm.

## I.  BACKGROUND

This case arises from a Detroit News October 6, 2020, article that includes an image of plaintiff, a Michigan Department of Corrections officer, working at the Detroit Detention Center (DDC).  The article, titled "Hijab removal for mugshot prompts lawsuit against Detroit city jail, MDOC," discussed a criminal detainee who filed suit after being forced to remove her hijab when taking a booking photograph at the DDC.  The image of plaintiff accompanied a Facebook post advertising the article.  The image depicts plaintiff in uniform and seated behind a desk.

Plaintiff filed a complaint against defendant, asserting one count of invasion of privacy via false light and misappropriation[1] and one count of defamation.  Plaintiff alleges that she did not

---

[1] Curiously, while plaintiff's complaint mentions both false light and misappropriation under her invasion of privacy claim, there is no subsequent mention below of any misappropriation claim, neither in the parties' later filings nor the trial court's ultimate opinion and order.  Nevertheless,

provide authorization or consent for defendant to use her image, defendant appropriated her image for its own use and benefit, and its publication of her image wrongly implied she was a criminal. Plaintiff further alleges that, despite her request that defendant remove her photograph and print a retraction, defendant knowingly and recklessly continued publication. Plaintiff also contends that defendant acted intentionally or negligently in publishing her image and thus caused her severe emotional distress. According to plaintiff, the article was widely disseminated, with her image eventually appearing on "extreme militant anti-Islamic websites," and she was soon recognized from the article by friends, family, and detainees through her work as a detention officer. The complaint states that defendant's article was about a criminal detainee wearing a hijab, which plaintiff claims implicates her because she also wore a hijab, and the article used a photograph of her wearing a hijab while working behind her desk at the detention center instead of an image the detainee actually referenced in the article.[2]

Therefore, plaintiff asserts that this juxtaposition implied she was the detainee in the article and thus committed some crime.

In lieu of filing an answer, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim). Defendant, noting plaintiff's alleged status as a public official, argued that her defamation and false light claims failed because (1) its article did not contain any false statements about her, (2) the article did not contain any statement or implication about her that was defamatory in nature, and (3) she did not—and could not—present clear and convincing evidence that it acted with actual malice. In response, plaintiff argued that she did sufficiently plead valid claims of both defamation and false light, particularly given the false implication of her criminality from the article and accompanying photograph. She further argued that she was not a public official and that the public interest exception did not apply for her claims. Notably, plaintiff acknowledges that her complaint "erroneously stated that the Detroit News picture depicts her in a hijab."

The trial court dispensed with oral argument and entered an opinion and order granting defendant's motion for summary disposition. First, the court noted that inquiry under MCR 2.116(C)(8) is generally limited to the pleadings alone. But relying on *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 301 n 1; 788 NW2d 679 (2010), it did additionally consider the news article and accompanying image, which defendant provided with its motion. The court then concluded that defendant's article made no false statements about plaintiff but merely "show[ed] a photograph of [her] behind a desk wearing her uniform." The court continued that, after independently viewing the article and photograph, defendant was not wearing a hijab in the accompanying image, and the article itself never stated she was the criminal detainee referenced therein; accordingly, no implication existed putting plaintiff in a false light. Concerning defamation, the court similarly concluded that, contrary to plaintiff's allegations, the article did not falsely impute to her criminality. Lastly, the court concluded that plaintiff was a public official,

---

because plaintiff does not contend on appeal to have a valid misappropriation claim, we will not consider this issue.

[2] Plaintiff has retracted the claim that the photograph shows her wearing a hijab.

and that she failed to adequately plead malice as required for such individuals to state a valid defamation claim. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. Furthermore, when considering a defamation claim, this Court "must make an independent examination of the facts to make sure that the speaker's First Amendment right of free expression is preserved." *Edwards v Detroit News, Inc*, 322 Mich App 1, 12; 910 NW2d 394 (2017) (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiff argues that the trial court erred in dismissing her complaint because she did sufficiently plead viable claims for both defamation and false light invasion of privacy. We disagree.

To establish a claim of defamation, a plaintiff must prove the following:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Edwards*, 322 Mich App at 12.]

"[A] cause of action for defamation by implication exists in Michigan, but only if the plaintiff proves that the defamatory implications are materially false[;] . . . such a cause of action might succeed even without a direct showing of any actual literally false statements." *Hawkins v Mercy Health Servs*, 230 Mich App 315, 330; 583 NW2d 725 (1998) (emphasis omitted). And a publication "imputing the commission of a criminal offense" is actionable in and of itself as defamation per se. See MCL 600.2911(1).

Furthermore, when particular communications reference a public figure or public official, as opposed to a nonpublic, private individual, the plaintiff must also prove that the defamatory statement was made with actual malice, not mere negligence. *Collins v Detroit Free Press, Inc*, 245 Mich App 27, 32 n 2; 627 NW2d 5 (2001). This requires the defendant's knowledge of the statement's falsity or reckless disregard of whether it was false. *Id*.

Similarly, a false light invasion of privacy claim requires a plaintiff to show "that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Puetz v Spectrum Health Hosps*,

324 Mich App 51, 69; 919 NW2d 439 (2018) (quotation marks and citation omitted). And the defendant "must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Id*. (quotation marks and citation omitted).

Plaintiff first argues that she did state a valid claim of defamation.[3] Plaintiff argues that (1) her claim falls squarely within the well-recognized cause of action for defamation by implication, (2) her complaint adequately established the existence of a false and defamatory statement, (3) the public interest privilege does not apply here, (4) she is not a public figure,[4] and (5) she, therefore, needed only prove negligence, not actual malice. On the first point, plaintiff highlights that she had no involvement with the individual whom was actually referenced in defendant's article, and that she was not even working at the DDC that day. She then faults the article for including her image with no identification or other indication that she was simply an incidental corrections employee, with this lack of context or any clarification allowing for the inference that she was the criminal detainee referenced in the article. According to plaintiff, the article, the accompanying image, and the image caption thus combined to "falsely impute[] [her] to be a criminal." The fact "[t]hat [she] may on occasion wear a hijab made it all the more likely she would be the imputed perp." Plaintiff specifically relies on *Parnell v Booth Newspapers, Inc*, 572 F Supp 909 (WD Mich, 1983), and *Clark v American Broadcasting Cos, Inc*, 684 F2d 1208 (CA 6, 1982), two cases wherein the defendant-news organizations' motions for summary

---

[3] At the outset, plaintiff notes that defendant's motion in the trial court included affidavits and other materials, allegedly in an attempt to dispute plaintiff's allegations from the complaint. She asserts that such matters were not properly before the trial court because a motion for summary disposition under MCR 2.116(C)(8) is tested on the pleadings alone. However, this point, while generally accurate, is largely incorrect under these particular circumstances. The trial court discounted the majority of defendant's additional evidence beyond the pleadings, stating in its opinion that it would only consider the pleadings, the article, and the subject photograph when deciding the motion. Plaintiff does not dispute on appeal that the trial court was permitted to consider the article and the subject photograph when deciding the motion. Arguably, the article and the subject photograph became part of the pleadings under our court rules because plaintiff's claims were based upon these instruments. See MCR 2.113(C)(2).

[4] There is some dispute on appeal regarding plaintiff's use of the words public figure instead of public official and whether her argument, in part, cites to irrelevant legal standards. We do not provide extended discussion of this point, however, and simply address the issue under the requisite principles set forth by the United States Supreme Court and interpreted by Michigan courts. Despite plaintiff's use of the terms public figure and public official interchangeably, we note that, while public figures and public officials must both plead actual malice to establish a viable defamation claim, they are still distinct legal categorizations. See *Collins v Detroit Free Press, Inc*, 245 Mich App 27, 32 n 2; 627 NW2d 5 (2001) ("[W]hen a plaintiff is a public figure *or* public official, the actual malice standard applies irrespective of the media or nonmedia status of the defendant.") (emphasis added). Accordingly, plaintiff's assertions that she is not a public figure are hereafter evaluated under the legal standards defining a public official.

judgment on the plaintiffs' defamation claims were denied when news reports falsely implicated their involvement in prostitution.

Plaintiff also criticizes the trial court's reliance on her being in uniform in the photograph when it denied her defamation-by-implication argument below, asserting that the court improperly made an inference in defendant's favor by failing to consider that even uniformed officers may commit crimes. Her being in uniform, she argues, does not dispel the implication from the article that she was the criminal detainee referenced therein. Relatedly, plaintiff argues that her pleadings establish both the falsity and defamatory nature of defendant's article because of this false implication that she was the criminal referenced therein. This, plaintiff claims, is defamation per se.

Plaintiff cites *Parnell*, and its reliance on *Clark*, that the public-interest privilege is inapplicable here because she was an incidental figure whose involvement in the public-interest aspect of defendant's publication was tenuous, if not nonexistent. Similarly, plaintiff claims that she is not a public official because she neither is generally well-known in, nor has pervasive involvement in the affairs of, society. Plaintiff also argues she did not have any special prominence in the limited public issue addressed by defendant's article. Plaintiff argues her status as a corrections officer is different from general law enforcement officers in that as a low-level corrections officer, she has limited to no interaction with the general public, unlike law enforcement officers. Plaintiff claims her status as a corrections officer did not render her a public official for certain, limited claims to the extent that she had no involvement with the events or individual discussed in the article and was not even working that day. Accordingly, plaintiff asserts that the trial court wrongly concluded she was a public official, and that she had to establish actual malice to proceed on her defamation claim.

Nevertheless, plaintiff argues, she can establish malice. According to plaintiff, malice is satisfied here by defendant's publication of her image while knowing she was not the detainee referenced in the article. She contends "[t]hat [d]efendant may have failed to appreciate that the criminal activity would be imputed to Plaintiff does not make the publication any less intentional or reckless." Plaintiff asserts that malice is further evinced by defendant's failure to subsequently remove the photograph despite her requests that it do so.

Lastly, plaintiff argues that she has a valid false light invasion of privacy claim. According to plaintiff, the article's alleged imputation of criminality was certainly unreasonable and highly objectionable, especially given plaintiff's employment as an overseer of others who commit crimes. She incorporates by reference her earlier argument on the public[-]interest privilege, claiming that analysis of this issue is the same under defamation and false light claims.

Accordingly, plaintiff requests that this Court reverse the trial court's dismissal of her claims and remand for those claims to proceed.

We conclude that plaintiff failed to sufficiently plead her defamation and false light claims. First, plaintiff is wrong that the public-interest privilege[5] does not apply here. Though she asserts that *Parnell* and *Clark* support this point, these cases are distinguishable and, nevertheless, not binding on this Court.[6] Specifically, while *Parnell* stated that even publications dealing with matters of public concern may be exempted from the privilege regarding a particular plaintiff who is simply an "incidental figure" and "not the focus of the alleged public interest publication," it ultimately declined to decide this issue on summary judgment because of a factual dispute regarding the plaintiff's connection to the subject of the publication. *Parnell*, 572 F Supp at 914-916, quoting *Clark*, 684 F2d at 1216. *Clark*, in concluding that use of the plaintiff's image was exempted from the public-interest privilege, specifically reasoned that there was "absolutely no connection" between the image, which simply showed the plaintiff walking down a public street in Detroit, and the public-interest publication, which addressed prostitution issues in that area of the city. *Clark*, 684 F2d at 1216-1217. The Court noted that the plaintiff did not even live in the area, was never involved with prostitution, and did not exhibit any opinions on or reaction to prostitution that would render her depiction within the publication of a matter of public interest. *Id.*

Here, in contrast, the image of plaintiff shows her working at the DDC, purportedly where booking photographs are taken, which is a process explicitly at issue in defendant's article. Despite plaintiff's argument that she never was specifically involved with the actual booking referenced in the article, we conclude that the image of her, a corrections officer going about her duties at the DDC, is sufficiently connected to the article's public interest focus so that it falls within the public-interest privilege. As such, plaintiff was required to plead that the article and associated image made an implication that was both defamatory and false. See *Locricchio v Evening News Ass'n*, 438 Mich 84, 115; 476 NW2d 112 (1991) ("[D]efamation by implication in private-figure/public-interest media cases requires proof of both defamatory meaning and falsity . . . ."); see also *New York Times Co v Sullivan*, 376 US 254, 270; 84 S Ct 710; 11 L Ed 2d 686 (1964) ("Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open . . . .").

Moreover, we conclude that plaintiff fails to state valid claims for both defamation and false light because, contrary to her allegation underlying both claims, the article and associated image did not present any defamatory implication or false characterization that she was a criminal. As the trial court correctly noted, nothing from the image or article suggests any connection between plaintiff, who is merely shown seated behind a desk at the DDC in official uniform, and the person booked at the DDC referenced in the article. Plaintiff acknowledges she is not wearing

---

[5] While our Supreme Court stated in *Rouch v Enquirer & News*, 440 Mich 238, 247; 487 NW2d 205 (1992), that the public-interest privilege has "been largely subsumed by the more expansive constitutional protections afforded by the *New York Times* standard," it still requires a plaintiff—even a private person—to show the actual falsity of the communication(s) at issue when involving issues of public concern. *Id.*

[6] Federal cases, while potentially persuasive, are not binding on this Court unless issued by the United States Supreme Court on a matter of federal law. See *Abela v GMC*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

a hijab in the photograph, nor is there an image of a mugshot or other headshot that could cause confusion between her and the detainee referenced in the article. Instead, the photograph simply presents an accurate depiction of a clearly-identified corrections worker that was relevant, if not to the specific individual discussed in the article, then at least to the general circumstances at issue. Additionally, that plaintiff claims she occasionally wears a hijab is not relevant. That claim does not exacerbate any implication of criminality; given that she is not wearing a hijab in the published photograph at issue. This fact alone does not reasonably imply that she was the detainee referenced in the article. Defendant also accurately notes that there is no caption to the picture implicating any criminality, but rather has just a brief summary of the article along with the image and article link.

We also conclude that *Parnell* and *Clark* are distinguishable. In both of these cases, the defendant-news organizations' motions for summary judgment were denied, in part, because published images of the plaintiffs in conjunction with publications regarding prostitution created questions of fact concerning whether the plaintiffs were indeed defamed by implication. See *Clark*, 684 F2d at 1213-1214; *Parnell*, 572 F Supp at 912-916. But as defendant correctly notes, the different context between these cases and the current case renders them materially distinguishable. Critically, plaintiff here was depicted seated behind a desk in official uniform, with this fact creating the reasonable inference that plaintiff worked at the DDC or was otherwise generally involved in the booking process. It did not imply that she was the detainee referenced in defendant's article.

In contrast, the depictions of the plaintiffs in *Parnell* and *Clark* included nothing to distinguish them from the criminal activity being discussed in their respective publications. *Clark*, in particular, relied on extensive contextual facts implicating the plaintiff's criminality that are lacking in the case before us:

> [The] Plaintiff was photographed as she walked down the street. Prior to [the] Plaintiff's appearance, the commentator noted that the street prostitutes were often black while their customers were often white. Moreover, the commentator noted that this neighborhood was a safe meeting place for the black street prostitutes and their white customers. As the commentator spoke two women were pictured. The first woman was white. She was obese, at least fifty years old, and carried a shopping bag in each hand. This woman appeared to be one of the residents of the middle[-]class neighborhood. The second woman shown was black, slightly obese, wore large-framed glasses, and carried a bag of groceries as she exited a store. Although this woman was black, she also appeared to be one of the residents of the middle[-]class neighborhood. [The] Plaintiff's picture appeared immediately following the appearance of these two matrons.

> The contrast between [the] Plaintiff's appearance and that of the two matrons is striking. [The] Plaintiff is black and appeared to be in her early to mid-twenties. She was slim, attractive, stylishly dressed, and wore large earrings. When her appearance is juxtaposed with that of the two matrons, it is not clear whether she is a resident of this middle[-]class neighborhood or one of the street prostitutes who plagued this community. Arguably, this ambiguity is clarified by the commentator's statement that the presence of the cruising white customers was a

humiliating experience for the black women who resided in the neighborhood. However, assuming arguendo that this statement tends to clarify the ambiguity, this partial clarification is negated by an interview which followed [the] Plaintiff's appearance.

Immediately following [the] Plaintiff's appearance, Sheri Madison, a resident of this neighborhood, appears on the screen and states: "Almost any black woman on the streets was considered to be a prostitute herself, and was treated as a prostitute." Thus, it is unclear whether [the] Plaintiff is one of those middle[-]class women erroneously considered to be a prostitute or is, in fact, a prostitute.

The ambiguity created when [the] Plaintiff's appearance is viewed within the context of . . . the effect of street prostitution on a Detroit middle[-]class neighborhood renders the Broadcast susceptible to both a defamatory and a non-defamatory meaning. [*Clark*, 684 F2d at 1213-1214.]

The article and associated image in the matter before us presents no defamatory or false implication. Defendant, therefore, could not have published with knowledge, a reckless disregard, or negligent intent of such. See *Tomkiewicz*, 246 Mich App at 668. Similarly, here, defendant's publication was not unreasonable or highly objectionable. See *Puetz*, 324 Mich App at 69.

Having so concluded, we need not address plaintiff's contention that she is not a public official and thus needed not plead actual malice.

## IV. CONCLUSION

In sum, for those reasons provided, plaintiff failed to state a valid claim for either defamation or false light invasion of privacy. Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica

-8-